**IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA – MIAMI DIVISION**

---x

NATHANIEL BALLANTYNE,
CRIDIKEL TRUTHBAY,
RENEE HASLER,
DARLENE P. LICIN,
ALIX PIERRE,
FRANTZ SAINT FORT,
(On behalf of themselves and all other similarly situated donors and beneficiaries)

Plaintiffs

THE AMERICAN RED CROSS,
GAIL J. MCGOVERN,
(in her Official Capacity as president Chief Executive Officer (CEO) of the American Red Cross),
CLIFF HOLTZ,
(in his capacity as president and CEO of the American Red Cross), and
THE BOARD OF DIRECTORS OF THE AMERICAN RED CROSS,
(in their individual and official capacities).

Defendants.

---x

**Case No.: 1-24 CV-24617**

**THIRD AMENDED CLASS ACTION COMPLAINT FOR ACCOUNTING OF DONATED FUNDS AND FOR MONEY DAMAGES**

**JURY TRIAL DEMANDED**

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by their attorneys, MORRIS LEGAL PC with offices at 2800 Biscayne Boulevard, Suite 530, Miami, Florida 33137, sue the defendants and allege as follows: This lawsuit is based on investigation by counsel, conversations with dozens of people including

discussions with counsel for Defendants.



## PRELIMINARY STATEMENT

Those who intercept the money intended for the poor have been aptly called "poverty pimps."[1] These individuals and organizations view the poor as commodities. They exploit the plight of the poor to extract resources from society, claiming to act in their name while serving their own interests. The poem below, written by Thomas Sowell in 1998, aptly describes such people and organizations:

*THE POVERTY PIMPS' POEM*

Let us celebrate the poor,
Let us hawk them door to door.
There's a market for their pain,
Votes and glory and money to gain.
Let us celebrate the poor.
Their ills, their sins, their faulty diction
Flavor our songs and spice our fiction.
Their hopes and struggles and agonies
Get us grants and consulting fees.
Celebrate thugs and clowns,

[1] See Capital Magazine, June 11, 2001, "The Poverty Pimp's Poem," available at https://www.capitalismmagazine.com/2001/06/the-poverty-pimps-poem/.

Give their ignorance all renown.
Celebrate what holds them down,
In our academic gowns.
Let us celebrate the poor.



Thomas Sowell's poem encapsulates how crises are often exploited for self-enrichment, neglecting the needs of those ostensibly being helped. This exploitation mirrors the actions of the defendants in this case, who leveraged the catastrophic 2010 Haiti earthquake,[2] and several subsequent earthquakes, and other natural disasters occurring in 2016, 2018, 2021,[3] and 2023,[4] to raise over five-hundred millions of dollars in donations, purportedly for relief efforts in Haiti.

[2] The January 12, 2010, earthquake was a devastating natural disaster that struck the West Indian Island of Hispaniola, which is shared by Haiti and the Dominican Republic. Haiti, occupying the western third of the island, was the most severely affected. While the exact death toll remains uncertain, the Haitian government reported more than 300,000 fatalities, potentially making it one of the deadliest natural disasters in recorded history, though other estimates are lower. Additionally, the nation's infrastructure was devastated, and hundreds of thousands of survivors were displaced and/or left homeless. See 2010 Haiti Earthquake, Britannica, available at https://www.britannica.com/event/2010-Haiti-earthquake

[3] On Aug. 14, 2021, a powerful magnitude 7.2 earthquake struck Haiti. The largest earthquake in the region since 2010, the disaster left at least 2,000 people dead, 12,000 people injured, and nearly 53,000 houses destroyed. See MIT News, available at https://news.mit.edu/2021/3-questions- camilla-cattania-william- frank-haiti-earthquakes-1006

[4] In June 2023, Haiti experienced two significant earthquakes: a magnitude 4.4 quake on June 4, followed by a magnitude 5.5 quake on June 6. These events caused loss of life, widespread property destruction, and the displacement of over 13,000 people. See UN News available at https://news.un.org/en/story/2023/06/1137407

Instead, significant portions of these funds were diverted for personal gain and administrative overhead, leaving the intended beneficiaries in Haiti to continue enduring hunger, poverty, and despair.[5]

This class action complaint is filed on behalf of two distinctive classes: (1) the Class of Beneficiaries, comprising of individuals residing in Canaan, Haiti and the United States who were personally victimized by the earthquake(s) in Haiti, including those reside in Canaan, Haiti who were the intended beneficiaries of earmarked ARC/USAID programs and (2) the Class of Donors, consisting of thousands of individuals in the United States and worldwide who donated over 500 million dollars to the Defendants from 2010 to 2024 specifically to aid earthquake victims in Haiti.



In the aftermath of the catastrophic 2010 earthquake in Haiti, the named Defendants (collectively referred to as the "Red Cross" or the "Defendants") launched an international fundraising campaign, presenting themselves as committed to the recovery and reconstruction of

[5] Why NGO do more Harm than Good to Poor Countries. A study by the Kellogg Foundations: https://insight.kellogg.northwestern.edu/article/international-aid-development-ngos-crowding-out-government

Haiti. Using evocative images of the devastation in Port-au-Prince and the suffering of Haitian victims, the Defendants raised over $500 million from 2010 to 2024. These funds were purportedly intended to rebuild roads, hospitals, schools, and housing, and to provide essential relief to earthquake victims. Additionally, the Defendants secured a $14 million grant from the United States Agency for International Development (USAID) to provide urban planning assistance, expand infrastructure services, and promote safer housing construction in Canaan, Haiti.

Despite these commitments, the Defendants failed to deliver on their promises. Instead of allocating the funds for their intended purposes, the Defendants knowingly or recklessly misused them to pay exorbitant executive salaries, cover unrelated administrative expenses, and support extravagant lifestyles. Funds from the USAID grant were fraudulently claimed and disbursed based on false certifications that the required work in Canaan had been completed. Investigations reveal that significant portions of the promised infrastructure, such as roads, water supply systems, and community spaces, were either not constructed or grossly incomplete.

The Defendants' conduct has left Haiti and its people in dire conditions, with little to no tangible benefits from the funds raised or allocated. Simultaneously, the Defendants perpetuated a pattern of fraudulent fundraising, leveraging each subsequent natural disaster to solicit additional donations under false pretenses.

Plaintiffs consist of individuals from two distinct classes: (1) beneficiaries residing in Canaan, Haiti, who were directly affected by the 2010 earthquake and subsequent disasters, and for whom USAID funds were received by the American Red Cross specifically earmarked for relief efforts in Canaan but were never properly used for their intended purpose; and (2) donors who contributed funds to the Defendants based on the belief that their donations would be used

exclusively to directly support recovery efforts in Haiti. In addition, the organizational Plaintiff brings claims on behalf of Haitian Americans who collectively donated substantial sums in support of those efforts.

This lawsuit seeks to hold the Defendants accountable for a systemic pattern of fraud, misrepresentation, and unjust enrichment. Plaintiffs allege violations of state and common law claims, including fraud, conversion, embezzlement, conspiracy, and negligent supervision. Plaintiffs demand an accounting of all funds raised and a recovery of damages to ensure justice for the Haitian people and the donors who were misled.

**POVERTY PIMPS**

The Defendants, like many other non-governmental organizations, have for decades exploited the poverty and calamities of impoverished nations and their people to enrich themselves under the guise of humanitarian aid. While claiming to collect funds to assist those in need, the reality is that hundreds of millions of dollars rarely reach the intended recipients. The Defendants' modus operandi involves targeting marginalized communities and using the images of suffering children and women in their videos, radio advertisements, and commercials to evoke sympathy and incentivize donations. They assure the public that these contributions will save lives. They did everything with the funds raised but save lives.

Following the 2010 earthquake, the Defendants, through the Red Cross, identified a lucrative opportunity to raise significant funds. They quickly engaged the people of Haiti, including the Haitian government, with promises of assistance. The Defendants publicly claimed that the funds would be used to build houses, schools, and hospitals, repair earthquake- damaged roads, provide shelter for earthquake victims, and supply essential medicine, food, and water to the people of Haiti. However, none of these promises were fulfilled. The Defendants repeated

similar fraudulent practices after subsequent earthquakes, including those in 2021 and 2023. To this day, the Defendants continue to solicit donations under false pretenses, deceiving the public into believing their contributions will aid the people of Haiti.



The Red Cross is a powerful international non-profit organization with offices worldwide. The Defendants have leveraged this power and influence to exploit and abuse the trust placed in them by the public. Haiti is just one of many poor countries the Defendants have routinely exploited for personal gain. For the Defendants, no calamity or natural disaster is wasted. In the case of Haiti, the 2010, 2021, and 2023 earthquakes, along with other disasters, served as opportunities for the Defendants to perpetuate their exploitation of the Haitian people and the Plaintiffs, who placed their trust in the Red Cross, hoping the organization would provide relief to those in desperate need.




**GOVERNMENT AND CONGRESSIONAL INVESTIGATIONS CONFIRM RED CROSS' MISUSE OF FUNDS**

Further reinforcing Plaintiffs' standing, investigations by Congress, the Department of Government Efficiency, and Senator Charles Grassley have revealed systemic misuse of Red Cross funds designated for Haiti. These findings include:

- The Red Cross squandered at least 25% of Haiti relief funds on internal expenses, per a 2016 Senate report led by Senator Grassley.[6]
- USAID funds granted to non-profits, including the Red Cross, for Haiti relief efforts were found to be misappropriated, according to Congressional investigation. [7]

---

6 See NPR, "Report: Red Cross Spent 25 Percent Of Haiti Donations On Internal Expenses", June 16, 2016, available at https://www.npr.org/2016/06/16/482020436/senators-report-finds- fundamental-concerns-about-red-cross-finances See also US Senate, "Investigation of the American Red Cross" Memorandum, issued by Senator Grassley, Chairman of the Judiciary Committee Member, Senate Finance Committee, 6/15/2016, available at https://www.grassley.senate.gov/imo/media/doc/2016-06-15%20Senator%20Grassley%20Red%20Cross%20Inquiry.pdf

7 See NY Post, "How USAID squandered billions in Haiti and around the globe", February 22, 2025, available at https://nypost.com/2025/02/22/opinion/how-usaid-squandered-billions-in-haiti-and-around-the-globe/ stating that:

> "Since the 2010 earthquake in Haiti killed as many as 300,000 people, the US government has disbursed around $4.4 billion in foreign assistance to the small island nation … the Red Cross claimed they provided housing to over 130,000 people, but the organization only constructed six verifiable homes. The Red Cross has refused to make available a list of the specific activities they conducted in Haiti, only providing a breakdown of the funds into large and non-descript "sectors" on their website. One of these sectors, shelter, proved to be particularly misleading, having

- Despite receiving funds to construct hundreds or thousands of homes, the Red Cross built only six, and these were left unfinished.[8]

## NATURE OF CASE

1. This class action lawsuit arises from the Defendants' fraudulent actions and their failure to account for over half a billion dollars donated expressly to assist victims of the 2010, 2021, and 2023 earthquakes, as well as other natural disasters that struck Haiti between 2010 and 2024. Instead of using the funds for their intended purpose, the Defendants misappropriated the money for unrelated purposes. Following the 2010 earthquake in Haiti, more than five million people worldwide-men, women, and children-generously donated to the Defendants. The Defendants capitalized on the images of suffering children in Haiti's streets and leveraged the influence of public figures to manipulate and pressure individuals into contributing as much as possible.

2. Named Plaintiffs and similarly situated individuals donated over $500 million to the Defendants between 2010 and 2024, believing the funds would be used exclusively to assist victims of the Haitian earthquakes. Defendants repeatedly assured donors that their contributions would directly aid those affected by these disasters. Fourteen years after the devastating 2010 earthquake, and despite subsequent earthquakes in 2021 and 2023, the people of Haiti are still awaiting meaningful assistance from the Red Cross and a full accounting of the funds collected. Despite numerous articles, letters, and requests for transparency sent to Defendants since 2010, the Defendants have refused to publicly disclose how the $500 million

---

promised residents new homes, health centers, and sanitization systems in the Campeche neighborhood. But three years later, none of these promises were kept."

[8] See ProPublica, Sen. Grassley Demands Red Cross Disclose Haiti Spending — And Gives Them a Deadline, July 9, 2015, available at https://www.propublica.org/article/grassley-demands-red-cross-disclose-haiti-spending-and-gives-them-deadline

was spent. Instead, they continue to solicit donations under false pretenses.



3. On January 12, 2010, a magnitude 7.0 earthquake struck southern Haiti, toppling buildings and power lines, resulting in widespread devastation. Raymond A. Joseph, Haiti's ambassador to the United States, described it as a catastrophic event for the Western Hemisphere's poorest nation.

4. The U.S. State Department anticipated "serious loss of life," according to spokesperson P.J. Crowley, as reported in Washington, D.C.

5. On January 13, 2010, following extensive media coverage by CNN highlighting the devastation in Port-au-Prince, the CEO of the American Red Cross, Gail J. McGovern, publicly announced that the organization stood ready to raise funds to assist Haiti in its recovery.

6. By January 15, 2010, Defendants had mobilized their operations in Haiti, requesting footage of the destruction to use in promotional campaigns.

7. Shortly thereafter, Red Cross commercials flooded media platforms, urging the public to donate to aid "the poor people of Haiti." Shocked by the scenes of devastation, Americans and others worldwide responded generously, donating substantial sums to the Defendants.

8. By January 20, 2010, Defendants issued a press release declaring that they had

raised $550 million for Haiti relief efforts.

9. On or about January 13, 2010, the named Plaintiff personally donated hundreds of dollars to the American Red Cross, believing these funds would be used exclusively to aid earthquake victims.

10. Over the past 14 years, Defendants have issued numerous misleading reports and communications falsely claiming that the funds were used to build hospitals and rebuild homes in Haiti. These statements are demonstrably false.

11. Over the past 14 years, Defendants have issued numerous misleading reports and communications falsely claiming that the funds were used to build hospitals and rebuild homes in Haiti. These statements are demonstrably false.

12. Despite their fraudulent actions and omissions, Defendants continue to assure the public that donations have supported earthquake victims, while knowingly using the funds for unrelated purposes.

13. For example, Defendants allocated $150 million of the donated funds to cover the Red Cross's financial deficit and used the remaining $400 million for unrelated projects. Nevertheless, Defendants persistently misrepresented, via email, U.S. mail, and the Internet, that these funds were used for recovery efforts in Haiti.

14. Defendants engaged in fraudulent concealment to obscure their initial fraudulent activities and perpetuate their scheme. These actions misled donors, who continued contributing based on false assurances that their donations would aid the people of Haiti.

15. The 2010 earthquake became a windfall for Defendants, as the Red Cross faced internal financial challenges, including a $150 million deficit and prior scandals tied to its 9/11 and Hurricane Katrina responses. Gail J. McGovern, then CEO, capitalized on the Haiti

disaster as a "spectacular fundraising opportunity," as described by a former official involved in the effort.

16. Prominent figures such as Michelle Obama, the NFL, and celebrities joined appeals for donations, further amplifying the fundraising campaign.

17. Unlike other organizations such as Doctors Without Borders, which ceased fundraising for Haiti once sufficient funds were secured, the Defendants continued soliciting donations. These funds were then misused, including to erase the Red Cross's $150 million deficit.

18. Ultimately, the Red Cross raised more funds for purported aid to Haiti than any other charity. However, the Red Cross failed to deliver on its promises, and both the people of Haiti and donors are still waiting for meaningful results.

19. In 2011, the Red Cross announced various projects that were never completed, despite claims that funds had been appropriated for them.

20. In January 2011, McGovern announced a $30 million partnership with USAID to build roads and infrastructure for housing projects. However, it took until August 2013 to finalize an agreement for a single site, which was eventually abandoned due to a land dispute.

21. A Government Accountability Office report identified severe delays in the Red Cross's Haiti program due to challenges such as securing land titles and leadership turnover. While other organizations overcame similar challenges to construct 9,000 homes, the Red Cross built only six, despite raising nearly $1 billion.

22. When questioned about their housing efforts, Defendants cited changing conditions as the reason for failing to deliver on their promises. An internal email from McGovern in 2013 suggested using remaining funds for unrelated projects such as a hospital,

reflecting the lack of a coherent plan.

23. Internal evaluations revealed that many Red Cross initiatives, such as sanitation and water access projects, failed to deliver tangible benefits to Haitian communities, further highlighting their inefficiency and mismanagement.

24. From 2010 to the present, Defendants have continued to solicit funds under false pretenses, raising close to $1 billion in the name of Haiti, while providing little to no evidence of the funds being used to assist its people. Defendants repeatedly misled the public, claiming the funds were spent on earthquake recovery, while diverting them to unrelated purposes and administrative costs.

25. Defendants' reliance on expatriate staff who lacked cultural knowledge, language skills, and local expertise further exacerbated the inefficiency of their programs. Many expatriates failed to attend critical meetings with Haitian community leaders, rendering the initiatives ineffective and alienating local stakeholders.

26. Defendants' reliance on expatriate staff who lacked cultural knowledge, language skills, and local expertise further exacerbated the inefficiency of their programs. Many expatriates failed to attend critical meetings with Haitian community leaders, rendering the initiatives ineffective and alienating local stakeholders.

27. Projects intended to improve living conditions in Haiti, such as road rehabilitation and sanitation infrastructure, were either severely delayed or never implemented. For instance, a $13 million project aimed at improving access to clean water and sanitation faltered due to mismanagement, leaving communities without the promised benefits. Instead, Defendants resorted to hand-washing education campaigns, which were criticized as ineffective in the absence of access to water and soap.

28. During a cholera epidemic that claimed over 6,000 lives by late 2011, Defendants' response was plagued by delays and mismanagement. Plans to distribute soap and oral rehydration salts were poorly executed, and internal documents described the efforts as "very behind schedule." Haitian officials and aid workers criticized the Red Cross's response, stating that early intervention could have prevented many deaths.

29. Defendants continued fundraising campaigns under the pretense of aiding Haiti not only misled donors but also diverted funds from other organizations capable of delivering effective relief. While some NGOs encountered challenges in Haiti, they managed to achieve tangible results, unlike the Red Cross, which failed to deliver on its commitments despite having unprecedented financial resources.

30. By prioritizing publicity and internal financial recovery over effective aid delivery, Defendants systematically betrayed the trust of donors and the Haitian people. Internal discussions within the organization often focused on projects that would generate positive publicity rather than those that would have the greatest impact on Haiti's recovery.

31. The Defendants' fraudulent misrepresentations and concealment spanned over a decade, enabling them to perpetuate their scheme and continue raising funds under false Publicly, Defendants claimed to have spent $486 million on Haiti, yet they failed to provide any verifiable evidence of such expenditures. Instead, the only documented financial benefits appear to have been increased compensation for Red Cross executives in both the United States and Haiti.

32. From 2010 to 2024, Defendants have exploited the goodwill of donors by raising significant funds purportedly for Haiti. Despite these efforts, they failed to fulfill their promises of building homes, schools, hospitals, and infrastructure or providing essential services

such as clean water and medical care. The Defendants' actions amount to a deliberate and ongoing fraud against donors and the Haitian people.

33. This systemic fraud has caused significant harm to Plaintiffs and the Class, who donated in good faith with the understanding that their contributions would directly benefit the victims of the Haiti earthquakes and natural disasters. Plaintiffs relied on Defendants' assurances and have suffered damages due to Defendants' failure to use the funds as promised.

34. Defendants' conduct demonstrates a reckless disregard for the lives and welfare of those they claimed to serve, as well as for the trust placed in them by millions of donors worldwide. Plaintiffs seek accountability, damages, and an end to Defendants' fraudulent practices to prevent further exploitation of vulnerable communities and unsuspecting donors.

**JURISDICTION AND VENUE**

35. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants federal jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, and 36 U.S.C. § 300105(a)(5), which confers federal jurisdiction over all cases involving the American Red Cross. The United States Supreme Court in *American Nat'l Red Cross v. S.G.,* 505 U.S. 247, 257 (1992), held that the "sue and be sued" provision in the Red Cross's Congressional charter "extends beyond a mere grant of general corporate capacity to sue" and "suffices to confer federal jurisdiction."

36. This Court has supplemental jurisdiction over Plaintiff's related state and common law claims pursuant to 28 U.S.C. § 1367, which authorizes federal courts to hear all other claims that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy.

37. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as substantial

events giving rise to the claims occurred in this judicial district, and Defendants conduct business here.

## THE PARTIES

### The Individual Donor Plaintiffs

38. Plaintiff Nathaniel Ballantyne is a resident of the State of Washington and a citizen of the United States. Between 2010 and 2023 Nathaniel donated over $280.00 to the Defendants, relying on their promise made on television, online advertisements and public statements that were continuously made by the Defendants beginning in 2010, that the funds would be used exclusively to aid victims of the 2010 Haiti earthquake and, more broadly, to assist the Haitian people. At no point was he aware or made aware of the fact that a substantial portion of the funds raised ostensibly to help the Haitian earthquake victims would be used to cover administrative costs, executive salaries or unrelated projects. In fact, had he been so informed, he would not have donated funds to the Defendants. Mr. Ballantyne sustained an injury because, among other things, his donations were not used as promised and as he intended.

39. Plaintiff Renee Hasler is a resident of Washington State. Between 2010 and 2023, Plaintiff donated $300.00 to the Defendants. Based on the television, online advertisements and public statements made by the Defendants since 2010, she believed that the funds would be used exclusively to help Haiti's recovery efforts in the aftermath of the 2010 earthquake. At no point was she aware or made aware of the fact that a substantial portion of the funds raised ostensibly to help the Haitian earthquake victims would be used to cover administrative costs, executive salaries or unrelated projects. In fact, had she been so informed, she would not have donated funds to the Defendants. Ms. Hasler sustained an injury because, among other things, his donations were not used as promised and as she intended.

40. Plaintiff Darlene P. Licin is a resident of New York City, New York. Between 2010 and 2024, Plaintiff donated $200.00 to the Defendants. Based on the television, online advertisement and public statements made by the Defendants, she believed that her contributions would be used exclusively to assist the people of Haiti. At no point was she aware or made aware of the fact that a substantial portion of the funds raised ostensibly to help the Haitian earthquake victims would be used to cover administrative costs, executive salaries or unrelated projects. In fact, had she been so informed, she would not have donated funds to the Defendants. Ms. Lincin sustained an injury because, among other things, his donations were not used as promised and as she intended.

41. Plaintiff Critikel Truthbey is a resident of California. Between 2013 and 2014, Plaintiff $16,000.00 to the Defendants. These funds were donated based on Defendants' online and public statements that the donations would be used to provide relief for the victims of the 2010 earthquake in Haiti. Mr. Truthbey began hearing these representations from the Defendants beginning after the 2010 earthquake Haiti. However, none of the funds reached Haiti; instead, the Defendants diverted the money for unrelated purposes. At no point was he aware or made aware of the fact that a substantial portion of the funds raised ostensibly to help the Haitian earthquake victims would be used to cover administrative costs, executive salaries or unrelated projects. In fact, had he been so informed, he would not have donated funds to the Defendants. Mr. Truthbey sustained an injury because, among other things, his donations were not used as promised and as he intended.

**Beneficiary Plaintiffs**

42. Plaintiff Frantz Saint Fort is a resident of Canaan, located on the outskirts of Port-au-Prince, Haiti. Plaintiff Saint Fort, along with other named Plaintiffs residing in Canaan, brings

this action on behalf of a narrowly defined class of intended beneficiaries of the Red Cross's USAID-funded "Canaan Reconstruction Project." The $14 million grant provided by USAID specifically designated these Plaintiffs to receive permanent housing, clean water, and urban infrastructure improvements. However, in violation of the terms of the USAID agreement, Defendants knowingly diverted restricted funds to unrelated initiatives and failed to deliver the promised relief. As a result, Plaintiffs suffered actual harm—including the loss of property and/or loved ones—directly attributable to Defendants' mismanagement and fraudulent conduct. Plaintiffs are intended third-party beneficiaries of the USAID-funded project earmarked exclusively for relief efforts in Canaan.

**The Defendants**

43. Defendant, the American Red Cross hereinafter ("ARC"), is an American non-profit organization incorporated in the State of Delaware since 1881. The corporate Defendant has its principal headquarters at 430 17th Street, NW Washington, DC.

44. Defendant Gail J. McGovern served as the President and Chief Executive Officer (CEO) from June 23, 2028, until her retirement on June 30, 2024. This defendant has overseen the Haiti earthquake fund raising project. Under her leadership, ARC raised over half a billion dollars and diverted the money to other projects other than the Haiti earthquake recovery project as promised.

45. Defendant Cliff Holtz joined the ARC in 2010. He served as the Chief Operating Officer of the ARC from approximately 2017 through June 30, 2024, and then President and CEO of the ARC from July 1, 2024, through the present date. Defendant Holtz led emergency responses for the ARC, including the one in Haiti from 2010 to 2024.

46. The Board of Directors of the ARC is composed of between 12 and 20

members responsible for governing and overseeing the organization's management. The board is made up of volunteers, and membership requirements are similar to those of corporate boards.

## THE CONGRESSIONAL CHARTER OF THE AMERICAN RED CROSS CONFERS JURISDICTION ON THIS COURT

47. The Congressional Charter of the ARC ("Charter"), 36 U.S.C. § 300105, grants original jurisdiction in every federal court for any action that this organization is defending. The Charter states in relevant part that "[t]he [Red Cross] may **sue and be sued** in courts of law and equity, State or Federal." 36 U.S.C. § 300105. The meaning of this phrase was clarified by the Supreme Court in *Am. Nat'l Red Cross v. S.G.,* 505 U.S. 247, 257 (1992), wherein the Supreme Court held that the "sue and be sued" provision within this document "extends beyond a mere grant of general corporate capacity to sue and suffices to confer federal jurisdiction." *Bartels v. Alabama Commercial College, Inc.,* 54 F.3d 702, 707 n.4 (11th Cir. 1995) ("The American National Red Cross charter authorizes the organization to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C.A. § 2."); *Schaefer v. Gulf Coast Reg'l Blood Ctr.,* 10 F.3d 327, 329 (5th Cir. 1994); *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993; *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 483 n.1 (4th Cir. 1992).

## DEFENDANT SPECIFIC ALLEGATIONS

### Defendant Gail J. McGovern

48. Gail J. McGovern served as President and CEO of the American Red Cross from 2008 until June 30, 2024, and was one of the principal leaders responsible for overseeing the ARC's fundraising strategy for Haiti earthquake relief following the 2010 earthquake.

49. Defendant McGovern was materially involved in the development, approval, and

implementation of the public statements and promotional campaigns that falsely represented to donors – via televised interviews, press conferences, and ARC promotional materials, including on redcross.org and affiliated social media, etc. -- that 100% of donated funds would be used exclusively to aid victims of the Haiti earthquake. Plaintiffs Ballantyne, Lincin, Truthbey, and Hasler each viewed and relied upon these public statements at the time they made their donations.

50. Defendant McGovern was directly involved in directing and managing the organization's public messaging strategy and knowingly authorized the continued dissemination of false or misleading statements that she understood were inconsistent with the actual use of funds.

51. Defendant McGovern knew at the time those statements were made that the ARC had a long-standing internal policy of allocating substantial portions of donated disaster relief funds to unrelated administrative overhead, executive compensation, and prior debt obligations.

52. Defendant McGovern was fully aware of the representations being made to the public to solicit funds and of ARC's standard practice of diverting restricted funds, and with this knowledge, permitted such messaging to continue and failed to intervene or implement safeguards.

53. Defendant McGovern actively approved the use of Haiti-donated funds for non-Haiti-related purposes, including Red Cross debt recovery and unrelated domestic projects.

54. Defendant McGovern actively concealed the ARC's longstanding practice of diverting restricted donations and failed to correct public misimpressions that she knew to be false.

55. Defendant McGovern either participated in or enabled the false representations

that form the basis of the Plaintiffs' claims and is therefore a proper party to the causes of action asserted herein.

56. Defendant McGovern not only permitted the misleading solicitations to continue but affirmatively ratified policies allowing unrestricted reallocation of donated funds.

57. Internal reports presented to Defendant McGovern during the relevant period confirmed that the ARC was not using donations as represented. Despite this, Defendant McGovern failed to take corrective action and continued to approve budgets that relied on this donor deception.

58. Defendant McGovern ratified and benefitted from the systemic misrepresentations that led directly to Plaintiffs' donations and resultant injury and is therefore liable under theories of negligent supervision, aiding and abetting fraud and civil conspiracy and the claims raised herein.

59. Defendant McGovern was also personally involved in directing and managing the Red Cross's disaster relief strategy in Haiti and specifically oversaw the ARC's participation in the USAID-funded "Canaan Reconstruction Project." This project was funded by a $14 million federal grant intended to provide permanent housing, clean water, and infrastructure to residents of Canaan, Haiti.

60. Defendant McGovern participated in the negotiation and approval of the USAID agreement and made express representations to the government and the public that ARC would carry out the promised scope of work for the benefit of residents in Canaan. These representations were knowingly false at the time they were made because McGovern was aware that ARC lacked both the intention and operational commitment to complete the agreed-upon relief work.

61. Defendant McGovern approved internal policies that enabled the reallocation of restricted federal funds earmarked for Canaan to unrelated internal obligations, including executive compensation, administrative overhead, and non-Haiti projects.

62. Defendant McGovern knowingly authorized the continued submission of false progress reports and compliance certifications to USAID, creating the false impression that ARC was performing the promised work in Canaan. In fact, critical infrastructure, housing, and water systems were never completed or, in some cases, never even initiated.

63. Defendant McGovern actively concealed the ARC's failure to perform under the USAID agreement and failed to correct false impressions created in official filings and public updates regarding the status and use of the USAID funds.

64. Through her role, Defendant McGovern knowingly enabled and perpetuated the fraud alleged in Count II and is therefore personally liable to the Canaan Plaintiffs as intended third-party beneficiaries of the USAID-funded relief project.

**Defendant Cliff Holtz**

65. Cliff Holtz served as Chief Operating Officer of the American Red Cross from 2017 to 2024 and became President and CEO on July 1, 2024. As COO, Defendant Holtz was responsible for the oversight and execution of operational initiatives tied to Red Cross disaster response, including the Haiti relief programs.

66. Defendant participated in the creation, internal vetting, and implementation of public solicitations that falsely implied Haiti earthquake donations would be used solely for relief efforts, including housing and infrastructure rebuilding.

67. Defendant Holtz regularly authorized public-facing promotional campaigns and internal financial decisions reallocating disaster-designated funds to administrative expenses and

general Red Cross operations.

68. Defendant Holtz' role in operational execution and compliance placed him in a position of authority over the dissemination of misleading content and the internal decisions to divert funds, establishing a direct connection to the alleged harm.

69. Defendant Holtz was directly involved in implementing the misrepresentations that formed the basis of the Plaintiff's donations and in preparing materially false internal financial reports submitted to donors and government agencies. While Defendant Holtz may not have made public statements himself, his knowledge and direction of the Red Cross's misleading campaign renders him personally liable under the fraud and conspiracy claims alleged herein.

70. Defendant Holtz not only permitted the misleading solicitations to continue but affirmatively ratified policies allowing unrestricted reallocation of donated funds.

71. Internal reports presented to Defendant Holtz during the relevant period confirmed that the ARC was not using donations as represented. Despite this, Defendant Holtz failed to take corrective action and continued to approve budgets that relied on this donor deception.

72. Defendant Holtzratified and benefitted from the systemic misrepresentations that led directly to Plaintiffs' donations and resultant injury and is therefore liable under theories of negligent supervision, aiding and abetting fraud and civil conspiracy and the claims raised herein.

73. As COO, Defendant Holtz was also responsible for the oversight and execution of operational initiatives tied to Red Cross disaster response, including the Haiti relief programs and compliance with federal grants.

74. Defendant Holtz played a direct role in the management and oversight of the

ARC's performance under the $14 million USAID agreement for the Canaan Reconstruction Project. He was responsible for coordinating internal departments tasked with implementing housing, infrastructure, and water access projects in Canaan.

75. Defendant Holtz received internal reports and briefings confirming that the ARC was failing to complete the promised work under the USAID agreement. Despite this, he approved the continued submission of false and misleading reports to USAID and authorized the continued disbursement of federal funds to unrelated organizational functions.

76. Defendant Holtz ratified internal policies that permitted the diversion of restricted grant funds and failed to implement any safeguards to ensure that ARC complied with its contractual obligations to the beneficiaries in Canaan.

77. While Defendant Holtz may not have made public statements himself, his operational authority and knowledge of the ARC's nonperformance under the USAID agreement render him personally liable for the fraudulent conduct alleged in Count II, including fraud against the intended beneficiaries of the USAID project.

78. Defendant Holtz's conduct caused direct and foreseeable injury to Plaintiffs residing in Canaan, Haiti, who were denied the permanent housing, clean water, and infrastructure that ARC was contractually obligated to deliver.

**Defendant ARC**

79. Defendant ARC, through its various departments, employees, and agents—including but not limited to Defendants McGovern and Holtz—created and implemented a coordinated public campaign to solicit funds based on misleading claims. Through its branded materials, advertisements, spokespersons, and solicitations—including statements broadcast nationally and published on its website—the ARC systematically misrepresented that donations

would be used exclusively to fund hospitals, housing, infrastructure, and essential services in Haiti. In fact, only a small fraction of those collected funds were directed toward meaningful aid to the victims of Haiti.

80. Defendant ARC's organizational structure permitted systemic misrepresentations to flourish and facilitated the redirection of donor-restricted funds to general operations, administrative expenses, executive compensation, and unrelated projects. The organization's policies affirmatively enabled the misuse of donor intent and caused the direct injury for which Plaintiffs seek redress.

81. Defendant ARC, through its departments, officers, and agents—including Defendants McGovern and Holtz—entered into a contractual agreement with USAID to administer a $14 million federally funded reconstruction project in Canaan, Haiti, for the specific benefit of residents displaced by the 2010 earthquake.

82. In entering into this agreement, Defendant ARC represented that it would construct permanent housing, provide clean water, and implement urban infrastructure improvements for the Canaan community. These representations formed the basis for USAID's grant disbursement and established ARC's duty to the Canaan beneficiaries.

83. Despite receiving the full grant funds, Defendant ARC knowingly failed to perform its obligations under the agreement and instead diverted substantial portions of the funds to unrelated operational costs, debt service, and general administrative expenses. Core components of the project remained incomplete or were never initiated, leaving the Canaan residents without the promised relief.

84. Defendant ARC submitted false reports, compliance certifications, and public updates misrepresenting the status and progress of the Canaan project, thereby concealing its

failure to perform and misappropriation of restricted federal funds.

85. Defendant ARC's fraudulent conduct caused direct harm to the Plaintiffs residing in Canaan, who were the intended third-party beneficiaries of the USAID agreement and whose injury is fairly traceable to ARC's breach of duty and misrepresentations.

**Defendants the Board of Directors of the ARC**

86. The Board of Directors of the ARC had oversight authority and fiduciary responsibility to ensure compliance with donor intent and ethical fundraising.

87. Each Defendant Board member was aware of the Red Cross's longstanding practice of using restricted funds for unrestricted purposes and knowingly approved internal budgets and reports that contradicted public fundraising messages.

88. Each Defendant Board Member was fully aware of the representations being made to the public to solicit funds and of ARC's standard practice of diverting restricted funds, and with this knowledge, permitted such messaging to continue and failed to intervene or implement safeguards.

89. Each Defendant Board Member either participated in or enabled the false representations that form the basis of Plaintiffs' claims, and that each is therefore a proper party to the causes of action asserted herein.

90. Each Defendant Board Member not only permitted the misleading solicitations to continue but affirmatively ratified policies allowing unrestricted reallocation of donated funds.

91. Internal reports presented to the Defendant Board of Directors during the relevant period confirmed that the ARC was not using donations as represented. Despite this, each Defendant Board Member failed to take corrective action and continued to approve budgets that relied on this donor deception.

92. Each Defendant Board Member ratified and benefitted from the systemic misrepresentations that led directly to Plaintiffs' donations and resultant injury and are therefore liable under theories of negligent supervision, aiding and abetting fraud, and civil conspiracy and the claims raised herein.

**ALLEGATIONS COMMON TO ALL DEFENDANTS**

93. When the 7.2 earthquake struck Haiti in 2010, the Red Cross, under the leadership of its Chief Executive Officer Gail J. McGovern, saw an opportunity to leverage the disaster to raise millions of dollars. At the time, the organization was grappling with a deficit exceeding $150 million, which had resulted from years of financial mismanagement.



94. The Defendants exploited the pain and suffering of Haitian women, children, and men to solicit millions of dollars under false pretenses. Fully aware that they had no intention of using the funds to directly aid Haiti, the Defendants nevertheless misled the public and the U.S. Agency of International Development (USAID) through a series of public statements, using emotional images, poignant words, and videos depicting the suffering of Haitians to

compel donations.

95. Beginning on or about January 11, 2010, and continuing to the present day, the Defendants have raised funds under false pretenses. Rather than being truthful with donors, the Defendants exploited the emotional attachment of donors—particularly Haitian Americans—to Haiti and the plight of its people, using their suffering to solicit donations for purposes unrelated to the promised aid.

96. Also following the catastrophic 2010 earthquake in Haiti, the United States Agency for International Development (USAID) awarded the ARC a $14 million grant to specifically facilitate relief and reconstruction efforts in the Canaan region of Haiti. Under the terms of the grant, the ARC committed to perform several critical services, including:

- Providing urban planning assistance.
- Promoting safer housing and construction practices.
- Building the capacity of local entities to adopt safer and sustainable construction methods.
- Expanding infrastructure services, including increasing the water supply, constructing paved roads and community spaces, and establishing zoning and building regulations.

97. Despite these obligations, in addition to failing to provide the relief as promised and which formed the very basis for incentivizing the contributions made directly to it by individual donors, the ARC knowingly or recklessly failed to perform substantial portions of the work required under the grant. The organization nevertheless submitted claims to USAID certifying compliance and progress, thereby causing false or fraudulent claims for payment to be presented to the United States Government.



98. At the time of submitting these claims, the ARC had failed to (a) complete critical infrastructure projects, such as the construction of key roads and community spaces (b) provide the promised urban planning assistance or establish effective zoning and building regulations (c) deliver on commitments to build local capacity for safer construction practices.

99. Moreover, at the time of submitting these claims, the ARC (a) had actual knowledge that significant portions of the work were either incomplete or failed to meet the standards set forth in the grant agreement and/or (b) acted with deliberate ignorance or reckless disregard for the truth or falsity of its claims.

100. The misrepresentations made by the ARC were material, as they influenced USAID's decisions to disburse funds under the grant. The organization knowingly misled USAID into believing that it had fulfilled its contractual obligations, thereby securing payments it would not have otherwise received.



101. The funds allocated for infrastructure and community development by the USAID to the ARC were either misappropriated or spent on unrelated administrative expenses.

102. As a result, only minimal tangible benefits were delivered to the intended beneficiaries in Canaan, Haiti, and the intended beneficiaries of USAID's disbursed funds totaling $14 million were deprived of the promised resources and support.

103. The ARC's conduct demonstrates a systemic disregard for its obligations under the USAID grant and a reckless exploitation of disaster relief funding. These actions have caused significant harm to both the United States Government and the Haitian people.

104. Between 2010 and 2024, the Defendants raised nearly $1 billion in donations under the guise of aiding the people of Haiti. Of this total, $550 million was collected within the first week following the January 15, 2010, earthquake.

105. From January 2010 to the present, the Defendants continued their fraudulent fundraising practices, claiming the funds would be used for recovery efforts related to the 2010, 2021, and 2023 earthquakes in Haiti. Of the nearly $1 billion raised on behalf of Haiti, less than 1% was spent on Haiti or its people; over 99% of the funds were diverted to projects entirely unrelated to Haiti, the Haitian Diaspora, or the intended recipients.



106. Between 2010 and 2024, the Defendants intentionally misappropriated the entirety of the funds collected for Haiti relief efforts.

107. Over the course of nearly 14 years, the Defendants issued multiple fraudulent and misleading reports and communications claiming, for example, that funds had been used to build hospitals in Haiti—this was false. They also falsely claimed that funds were used to rebuild homes for earthquake victims, another fabrication.

108. Despite their fraudulent actions and omissions, the Defendants continue to publicly assert that the money raised was used to assist earthquake victims in Haiti. In truth, the funds were used for unrelated purposes without the knowledge of the donors.

109. For example, the Defendants diverted $150 million of the donated funds to cover the Red Cross's organizational deficit. The remaining $400 million was spent on projects unrelated to Haiti or its people. Yet, in subsequent communications via email, U.S. mail, and the Internet, the Defendants fraudulently represented that these funds were allocated for recovery efforts in Haiti.

110. The Defendants engaged in acts of fraudulent concealment, perpetuating a series of affirmative and ongoing misrepresentations. These actions were designed to obscure the

initial fraud, facilitate the continuation of their scheme, and deceive unsuspecting donors, who continued to contribute funds under the belief that their donations would benefit the people of Haiti.




111. For the past 14 years, the Defendants have knowingly engaged in fraudulent activities while continuing to raise funds under false pretenses. Whenever a natural disaster struck Haiti between 2010 and 2024, the Defendants capitalized on public emotion by using images and videos of the suffering Haitian people to manipulate members of the Class into donating even more money.

112. The Defendants had no intention of using the funds they raised to help Haiti. Instead, Haiti served as a convenient "poverty basket," enabling the Defendants to profit from each successive natural disaster. The more calamities that struck Haiti, the more money the Defendants collected—entirely under false pretenses and through deceptive public narratives.



113. Between 2010 and 2024, the Defendants actively prepared for disasters in Haiti, not with the intention of providing genuine aid to victims, but to exploit their suffering and misfortune. These preparations were focused on leveraging the devastation to manipulate donors into contributing more money. This pattern reflects the *modus operandi* of the Red Cross and similar non-governmental organizations, which capitalize on human suffering to enrich themselves.[9]

**CLASS ACTION ALLEGATIONS**

114. For the purposes of the relief sought in this action, Plaintiffs, as representatives of a Class comprising over one million donors and/or intended beneficiaries of the donated funds, bring this case pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated.

115. The Class Plaintiffs seek to represent consists of two distinct subclasses: Donors and Beneficiaries

[9] There have been many studies conducted showing that NGO and nonprofit organizations who claimed to work for the poor often hurts the poor in order to maintain their organizations. https://nebraskapublicmedia.org/en/news/news-articles/study-questions-whether-nonprofits-hurt-poor-communities/

116. Each of the named class representatives is either (1) a donor who was misled into contributing funds to the Defendants under false pretenses, or (2) a resident of Canaan, Haiti, who was an intended beneficiary of the $14 million USAID-funded relief project administered by the Defendants. Accordingly, each is a member of the proposed Class.

117. The Class of Donors includes all individuals who contributed funds to the ARC for Haiti earthquake relief between 2010 and 2024 in reliance on specific representations that the funds would be used exclusively to assist the earthquake victims.

118. The Class of Beneficiaries consists of all individuals residing in Canaan, Haiti, who were the intended recipients of the Red Cross relief project funded by a $14 million USAID grant. This grant specifically designated these individuals to receive permanent housing, access to clean water, and essential urban infrastructure. Contrary to the terms and representations made in the USAID agreement, Defendants knowingly misappropriated the restricted funds to unrelated projects and failed to deliver the promised relief. As a result, members of this class suffered concrete and particularized harm, including the loss of property and/or loved ones, directly traceable to Defendants' mismanagement and fraudulent conduct. Plaintiffs are intended third-party beneficiaries of the USAID-funded project and the $14 million expressly earmarked for relief efforts in Canaan.

119. The Class of Donors includes individuals from at least a dozen countries and is so numerous that joinder is impracticable. Likewise, the Class of Beneficiaries consists of thousands of individuals residing in Canaan, Haiti, who were the intended recipients of the USAID-funded relief project, rendering their joinder equally impracticable.

120. Common questions of law and fact apply to all members of the Class and predominate over any individual issues. These common questions include the Defendants' alleged

fraudulent practices, and the misuse of funds intended for Haitian earthquake victims. All Class members have been directly affected by the Defendants' actions, resulting in millions of dollars in damages.

121. The named Plaintiffs will adequately represent the Class and have retained experienced and competent counsel skilled in class action litigation.



122. A class action is the superior method for the fair and efficient adjudication of this controversy. Managing this case as a class action will pose no difficulties and will ensure the efficient resolution of all claims.

123. The conduct described herein demonstrates a systematic, Class-wide pattern of fraudulent behavior by the Defendants. Through deceptive actions, the Defendants defrauded and misled millions of donors, resulting in substantial harm to both the Class of Donors and the Class of Beneficiaries. These actions constitute violations of various federal and state statutes.

124. The Defendants acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for the law in their fraudulent conduct and misuse of donated funds.

125. As a result of the Defendants' conduct, members of the Class have suffered intentional infliction of emotional distress, conversion of funds, and significant economic losses.

126. The Defendants' actions have caused and continue to cause irreparable harm and loss to Class members, including but not limited to economic damages, emotional distress, and mental anguish. For these injuries, the Class seeks compensatory damages, in addition to other appropriate relief.

## CAUSES OF ACTION AND REQUEST FOR RELIEF

### COUNT I
**(Fraud Involving Solicitations for Donations- Donor Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

127. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

128. From January 2010 through June 2024, Defendants ARC, McGovern and Holtz developed, approved, implemented and disseminated public statements and promotional campaigns that falsely represented to the Plaintiffs and other members of the Class that the funds solicited through donations would be used exclusively to assist the people of Haiti.

129. These representations were made through various mediums, including television advertisements featuring video footage of the earthquake devastation in Haiti, specifically designed to evoke sympathy and encourage donations.

130. During this period, Defendants engaged in fraudulent conduct by knowingly and intentionally misrepresenting through the ARC's public statements and promotional campaigns that the donated funds would directly benefit the people of Haiti. These representations were false. Even before the donations were collected, the Defendants were aware that the funds would not be used for the purposes promised.

131. Evidence shows that the day after the earthquake, the Defendants convened a meeting to discuss their strategy for leveraging the disaster. At this meeting, Defendants

determined that the crisis in Haiti presented an opportunity to raise significant funds for the organization. Despite publicly stating that the funds would aid the Haitian people, Defendants knew and decided internally that they had no intention of using the donations for the promised purposes.

132. From January 2010 through June 2024, the Defendants held multiple internal meetings concerning the fundraising efforts and the substantial sums collected. During these discussions, the Defendants made calculated decisions to continue misrepresenting their intentions to the public. Specifically, the Defendants, through ARC's public statements and promotional campaigns, falsely promised that the ARC would:

a. Utilize donated funds exclusively to assist the Haitian people.
b. Collaborate with local organizations to identify and address the needs of specific communities.
c. Build homes for those displaced by the earthquake and partner with local organizations to achieve this goal.
d. Construct schools and assist the Haitian government in disaster recovery efforts.
e. Make lasting investments in Haiti's infrastructure.

133. These representations were knowingly false when made, and the Defendants intended for Plaintiffs and the members of the Class to rely on these false promises. These misrepresentations were part of a deliberate scheme to defraud donors and induce them to contribute funds and other property to the Defendants.

134. Contrary to their promises, the Defendants intentionally and purposefully failed to invest the donated funds in Haiti as represented, or at all, thereby betraying the trust placed in them by the Plaintiffs and members of the Class.

135. The Defendants had no intention of using the donated funds as promised, instead diverting the resources for purposes that did not align with the representations made to the Plaintiffs and members of the Class.

136. Plaintiffs and the Members of the Class justifiably relied on the Defendants' misrepresentations and, based on this reliance, donated, transferred, or transmitted more than $500,000,000.00. to Defendants.

137. From approximately 2010 through 2024, the Defendants engaged in additional fraudulent acts by disseminating false and misleading reports and communications. These communications falsely claimed that the donated funds were used to assist earthquake victims in Haiti, including building hospitals and rebuilding homes. The Defendants made these representations despite knowing them to be untrue.

138. For instance, the Defendants diverted $150 million of the donated funds to pay off the ARC’s financial deficit. Additionally, the remaining $400 million was allocated to projects unrelated to Haiti or its people. Despite this, the Defendants continued to issue fraudulent communications through email, U.S. mail, and the Internet, falsely representing that these funds were used for recovery efforts in Haiti.

139. The Defendants further engaged in acts of fraudulent concealment by perpetuating affirmative and ongoing fraudulent misrepresentations. These actions were intended to cover up their initial fraudulent activities and to facilitate the continuation of their scheme.

140. By doing so, the Defendants deceived unsuspecting donors, who continued to contribute money based on the belief that their donations would be used to assist the people of Haiti. These ongoing misrepresentations prevented the Plaintiffs and the Members of the Class from discovering the true nature of the Defendants' fraud until recently as the Defendants' consistent pattern of fraudulent communications actively misled donors and concealed the initial fraud.

141. As a result of the Defendants' conduct, the Plaintiffs and members of the Class

have suffered substantial harm.

142. The Defendants deliberate and intentional actions, executed with malice, fraud, and oppression, have caused and will continue to cause damages to the Class in an amount of more than $500,000,000.00. These damages include consequential losses such as attorneys' fees and costs incurred in investigating Defendants' fraudulent conduct and pursuing this action, all of which will be proven at trial.

143. Defendants acted to further their own private interests with willful, malicious, wanton, and oppressive behavior. Their conduct demonstrated a conscious and callous disregard for the consequences and a specific intent to harm the Class, warranting an award of punitive or exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct in the future.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

## COUNT II
**(Fraud Involving Agreement with USAID funds – Beneficiary Plaintiff's Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

144. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

145. This Count is brought on behalf of the Class of Beneficiaries—individuals residing in Canaan, Haiti—who were the specifically intended third-party beneficiaries of the $14 million USAID-funded "Canaan Reconstruction Project," administered by Defendant ARC.

146. In or around 2011, Defendants ARC, McGovern, and Holtz entered into a formal agreement with the United States Agency for International Development (USAID), under which ARC agreed to perform specific relief and development work in Canaan, Haiti, including the construction of permanent housing, the provision of clean water, infrastructure improvements, and urban planning assistance.

147. The agreement expressly designated residents of Canaan, Haiti—including named Plaintiffs Saint Fort, Pierre, Fontilus, and Placide—as the direct and intended beneficiaries of the funded services and infrastructure improvements.

148. In connection with this agreement, Defendants made representations to USAID, the public, and the residents of Canaan that they would use the funds exclusively for the completion of the Canaan Reconstruction Project.

149. These representations were false when made. At the time Defendants entered into the USAID agreement and accepted the funds, they knew or recklessly disregarded the fact that they had no intention of fully executing the promised project and instead intended to divert the restricted USAID funds for unrelated administrative expenses, internal debt obligations, and other non-Canaan initiatives.

150. Defendants subsequently submitted false reports and certifications to USAID attesting to progress and compliance, while knowingly failing to deliver the promised housing, infrastructure, and services. Key components of the Canaan project—such as road construction, water supply systems, and community development—were either abandoned or never commenced.

151. Defendants' fraudulent representations and concealment of their misuse of USAID funds deprived the intended beneficiaries—Canaan residents—of the relief promised

under the federal grant. As a result, Plaintiffs in the Beneficiary Class suffered real and concrete injury, including the continued absence of clean water, infrastructure, and safe housing.

152. Defendants' conduct constitutes actionable fraud against the Plaintiffs as intended third-party beneficiaries of the USAID-funded project. Defendants knowingly and intentionally made false representations with the intent to secure and retain federal funds, while failing to deliver on their obligations to the Plaintiffs and other residents of Canaan.

153. Plaintiffs relied on the promises and representations made to and through USAID as assurances of relief, infrastructure, and permanent housing that never materialized.

154. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs in the Beneficiary Class have suffered damages, including the loss of critical services, living conditions, and infrastructure they were promised and entitled to receive under the USAID agreement.

155. Defendants' conduct was willful, malicious, and executed with fraudulent intent and in conscious disregard of the rights and welfare of the Plaintiff Beneficiaries, justifying the imposition of punitive damages.

156. **WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of the Class of Beneficiaries and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory damages, punitive damages, costs, attorneys' fees, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT III
**(Breach of Implied Contract – Donor Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

157. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

158. As outlined above, the Defendants ARC, McGovern and Holtz solicited and entered into an implied contract with Plaintiffs and the Members of the Class, whereby donors agreed to contribute funds to the ARC for the sole purpose of assisting Haiti and its people.

159. Between 2010 and 2024, the Plaintiffs together with the members of the Class collectively donated over half a billion dollars to the Defendants with the explicit understanding that these funds would be used exclusively for Haiti's recovery and relief efforts.

160. The Defendants breached this implied contract by collecting the funds under false pretenses and, instead of using the money for its promised purpose, diverting it for unrelated uses contrary to the donors' expectations.

161. The Defendants were able to collect hundreds of millions of dollars specifically because they assured Plaintiffs and members of the Class that their contributions would directly help alleviate the suffering of the Haitian people.

162. In soliciting these funds, the Defendants exploited Plaintiffs' and class members' emotions by using images and videos of suffering Haitian women and children to evoke sympathy and coerce donations.

163. The Plaintiffs' and Members of the Class fully entrusted, paid, transmitted, turned over, and/or wired no less than half a billion dollars to the Defendants, in good faith reliance on the implied contract that the funds would be used to assist the people of Haiti. Plaintiffs and Members of the Class fully performed their obligations under the terms of this implied contract.

164. The Defendants materially breached the express and implied terms of the contract by failing to allocate the collected funds for the promised purposes. For example, Defendants misappropriated over $150 million to pay down prior debts resulting from

mismanagement.

165. Additionally, the Defendants breached their contract with the Plaintiffs and Members of the Class in other material ways, including but not limited to committing acts of fraud, deception, and embezzlement. The Defendants exploited the donated funds for their own benefit, diverting opportunities and resources intended for Haiti and its people.

166. The Defendants concealed their breach of contract by repeatedly and continuously disseminated fraudulent communications via email, U.S. mail, and the Internet, falsely asserting that the funds had been allocated to recovery efforts in Haiti. These misrepresentations were part of an ongoing effort to mislead donors and avoid detection.

167. The Defendants' fraudulent acts and concealment constitute a continuous breach of their contractual obligations. These ongoing misrepresentations prevented the Plaintiffs and the Class from discovering the true nature of the Defendants' misconduct until recently, as the Defendants' consistent pattern of fraudulent communications actively misled donors and concealed the breach of contract.

168. As a direct and proximate result of the Defendants' breaches, Plaintiffs and members of the Class have suffered substantial damages amounting to no less than $500,000,000.00. These damages will be established and proven at trial.

169. Plaintiffs have also suffered additional damage, including lost profits on their contributions, as well as attorneys' fees and costs, all of which are a direct and foreseeable consequence of the Defendants' actions.

170. **WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' damages for Defendants' breach of contract, lost profits on their investment, reasonable attorney's fees and costs, pre-

judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT IV**
**(Breach of Contract – Beneficiary Plaintiff's Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

171. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged herein

172. In or around 2011, Defendant ARC entered into a written and enforceable agreement with the United States Agency for International Development (USAID), under which ARC agreed to perform specific services and infrastructure projects in Canaan, Haiti. These included the construction of permanent housing, provision of clean water and sanitation infrastructure, development of urban planning and zoning regulations, and support for sustainable construction practices.

173. The USAID agreement expressly identified the residents of Canaan, Haiti—including named Plaintiffs Frantz Saint Fort, Alix Pierre, Ange Carmel Marie Fontilus, and Eric Placide—as the intended third-party beneficiaries of the promised services and improvements.

174. As intended third-party beneficiaries of the USAID-funded Canaan Reconstruction Project, the Beneficiary Plaintiffs acquired enforceable rights under the agreement, including the right to receive the specific aid, infrastructure, and services promised therein.

175. Defendants ARC, McGovern, and Holtz materially breached the agreement by failing to perform the contracted work in accordance with the terms of the USAID grant. Core project components, including road construction, water systems, permanent housing, and community infrastructure, were either grossly incomplete or never commenced.

176. Defendants further breached the agreement by knowingly diverting USAID funds to unrelated operational expenses, internal debt service, executive compensation, and projects outside the scope of the grant.

177. Defendant McGovern, in her role as CEO, approved policies and practices that permitted such misallocation of restricted federal funds and participated in or ratified the submission of false compliance reports to USAID.

178. Defendant Holtz, as COO and later CEO, oversaw project operations, received internal reports showing the project's nonperformance, and nevertheless authorized the continued submission of misleading progress certifications to USAID.

179. Defendants' failures and misrepresentations caused a total breakdown of performance under the agreement and deprived the Beneficiary Plaintiffs of the intended benefits of the contract.

180. As a direct and proximate result of Defendants' breach of contract, the Beneficiary Plaintiffs were denied permanent housing, clean water, infrastructure, and basic community resources promised under the USAID agreement, and have suffered physical, emotional, and economic harm as a result.

181. Defendants' conduct further subjected the Beneficiary Plaintiffs to prolonged exposure to unsafe living conditions, food and water insecurity, and the lack of basic public health infrastructure.

182. Plaintiffs have incurred damages resulting from Defendants' breach of contract, including the loss of contractually promised aid and essential services, with the total amount to be established at trial.

183. WHEREFORE, the Beneficiary Plaintiffs request that the Court enter judgment in

their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory damages, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and proper.

**COUNT V**
**(Breach of Implied Covenant of Good Faith and Fair Dealing- Donor Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

184. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

185. The implied contract referenced above inherently includes a covenant of good faith and fair dealing, as is the case with all contracts.

186. This implied covenant obligates both parties to act in good faith and fair dealing with their performance of and rights under the contract.

187. Through the conduct described herein, Defendants ARC, McGovern and Holtz denied the Plaintiffs and members of the Class the benefit of the bargain that was intended and established under the implied contract.

188. By their actions, the Defendants acted in bad faith and breached the implied covenant of good faith and fair dealing by failing to honor the terms and purpose of the implied contract.

189. The Defendants concealed their breach of the implied covenant by continuously disseminating fraudulent communications through email, U.S. mail, and the Internet. These communications falsely asserted that the funds would, and had, been used exclusively for recovery efforts in Haiti. Such misrepresentations were part of an ongoing strategy to mislead donors and obscure the Defendants' breaches.

190. The Defendants' acts of fraud and concealment constitute a continuous and

ongoing breach of the implied covenant of good faith and fair dealing. These repeated misrepresentations actively misled the Plaintiffs and Class members, preventing them from discovering the Defendants' misconduct until recently.

191. As a direct and proximate result of the Defendants' breaches of the implied covenant of good faith and fair dealing, the Plaintiffs and members of the Class have suffered and will continue to suffer significant financial harm. These damages, including consequential damages and other losses, are not less than $500,000,000.00, with the exact amount to be proven at trial.

192. Plaintiffs have also suffered additional damage as a foreseeable consequence of the Defendants' conduct, including lost profits on their contributions, as well as attorneys' fees and costs incurred in addressing and uncovering the Defendants' violations.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' damages for Defendants' breach of implied covenant of good faith and fair dealing, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT VI**
**(Breach of Implied Covenant of Good Faith & Fair Dealing - Beneficiary Plaintiff Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

193. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged herein.

194. The USAID agreement entered into between ARC and the United States government with regard to the Canaan Reconstruction Project constituted a valid and enforceable

contract, under which Plaintiffs Frantz Saint Fort, Alix Pierre, Ange Carmel Marie Fontilus, and Eric Placide, as residents of Canaan, were intended third-party beneficiaries.

195. As with all contracts under U.S. law, the USAID agreement carried an implied covenant of good faith and fair dealing, which obligated the Defendants to act honestly and fairly in executing their contractual obligations and to refrain from actions that would deprive the intended beneficiaries of the agreement's benefits.

196. The Beneficiary Plaintiffs were entitled to the housing, water systems, sanitation infrastructure, and other community development resources that the USAID agreement was designed to deliver.

197. Defendants ARC, McGovern, and Holtz breached the implied covenant of good faith and fair dealing by failing to perform the contract in accordance with its intended purpose and by taking actions that undermined the project's success—such as misallocating USAID funds, falsely reporting on project completion, and abandoning key components of the Canaan Reconstruction Project.

198. Rather than making good faith efforts to fulfill the obligations under the USAID agreement, Defendants knowingly engaged in practices that diverted project funds, concealed material failures from USAID and the public, and misrepresented their compliance with the agreement's terms.

199. Defendant McGovern, as ARC CEO, and Defendant Holtz, as COO and later CEO, were personally involved in the development, oversight, and concealment of project failures, and were aware that their actions would deprive the intended beneficiaries of the contractually promised benefits.

200. These actions directly frustrated the central purpose of the USAID agreement and

deprived the Beneficiary Plaintiffs of the aid, infrastructure, and basic services that were meant to improve their living conditions in the aftermath of the Haiti earthquake.

201. As a result of Defendants' bad faith and breach of the implied covenant, the Beneficiary Plaintiffs suffered physical hardship, health risks, and economic deprivation that the USAID project was specifically intended to mitigate.

202. Plaintiffs have incurred damages arising from Defendants' breach of the implied covenant of good faith and fair dealing, including loss of access to safe housing, clean water, community infrastructure, and economic opportunities, in amounts to be established at trial.

203. **WHEREFORE**, the Beneficiary Plaintiffs request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory damages, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT VII
## (Unjust Enrichment – Donor Plaintiff's Claim)
## (Against Defendants ARC)

204. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

205. At Defendant ARC's request, and in reliance on its promises that the donated funds collected would be utilized exclusively tohelp the people of Haiti, the Plaintiffs and members of the class collectively donated millions of dollars to Defendant ARC.

206. Defendant ARC received over half a billion dollars in donated funds between 2010 and 2014 and another 50 million dollars between 2014 and 2024.

207. Defendant ARC promised the donors that the money would be used exclusively to benefit the people of Haiti. However, Defendant ARC had no intention of using the money for the

intended purpose.

208. Based on the Defendant ARC's false promises – that the donated funds would be used exclusively to help the victims of the Haiti earthquakes – the Plaintiffs and members of the Class entrusted, paid, transmitted, turned over and/or wire not less than four hundred and eighty seven millions dollars to Defendant ARC.

209. Only a negligible portion of the donated funds provided were actually used in Hati between 2010 and 2024, the vast majority of the donated funds were stolen or converted by Defendant ARC for its and the other Defendants' own benefit to the great detriment of the members of the Class.

210. Defendant ARC failed to use the vast portion of the donated funds provided to them by the Plaintiffs and members of the Class as set forth above. The Plaintiffs and members of the Class would not have donated the money if they knew that Defendant ARC had no intention of using the fund as promised.

211. Defendant ARC received and retained the benefit of the Plaintiffs' performance, including their money and property, in direct violation of Defendant's obligations to the Plaintiffs and without performing in accordance with the Defendant's promises and pretenses.

212. The Defendant ARC concealed its unjust enrichment by continuously disseminating fraudulent communications through email, U.S. mail, and the Internet. These communications falsely asserted that the funds had been used for recovery efforts in Haiti. Such misrepresentations were part of an ongoing strategy to mislead donors and obscure the Defendant's breaches. These repeated misrepresentations actively misled the Plaintiffs and Class members, preventing them from discovering the Defendant's misconduct until recently.

213. Defendants must be required to return to the Plaintiffs and members of the Class

all of their money that Defendant ARC wrongfully retained.

214. Defendant ARC has been unjustly enriched, and the Plaintiffs are entitled to be compensated for the benefit they have conferred on the Defendant.

215. The value of the money and property unjustly retained by Defendan is in excess of half a billion dollars, the exact amount of which will be proven at trial.

216. The Plaintiffs have also suffered additional damages in the form of lost profits on their investment and attorneys' fees and costs as a proximate and foreseeable result of Defendant's conduct.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' damages for the money and property unjustly retained by the Defendants, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT VIII**
**(Unjust Enrichment – Beneficiary Plaintiff's Claim)**
**(Against Defendant ARC)**

217. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged herein

218. Defendant ARC entered into a binding agreement with USAID for the purpose of delivering specific infrastructure, housing, water access, and other humanitarian services to the residents of Canaan, Haiti—who were the intended and identified beneficiaries of the USAID-funded Canaan Reconstruction Project.

219. Plaintiffs Frantz Saint Fort, and other members of the class, are Haitian nationals

residing in Canaan, Haiti, and are among the individuals for whose direct benefit the USAID funds were disbursed and the project was initiated.

220. Defendant ARC accepted and retained tens of millions of dollars in USAID funds specifically earmarked for delivering the above-mentioned services to the Beneficiary Plaintiffs.

221. In receiving these funds, ARC represented—explicitly to USAID and implicitly to the Haitian public—that the funds would be used for construction of housing, clean water infrastructure, sanitation systems, and other recovery initiatives in Canaan.

222. However, ARC failed to deliver the services and infrastructure promised under the agreement. It diverted or misused large portions of the funds, resulting in the near-total failure of the Canaan Reconstruction Project.

223. Despite failing to perform under the terms of the USAID-funded program, ARC retained the benefit of the government funding and used substantial portions for internal debts, general overhead, and unrelated purposes.

224. The Beneficiary Plaintiffs never received the intended benefits of the project. They were denied access to safe housing, potable water, basic infrastructure, and economic recovery efforts, all of which were promised and funded under the USAID agreement.

225. ARC has been unjustly enriched by retaining and using government funds that were intended for the direct benefit of the Beneficiary Plaintiffs, while failing to fulfill the obligations tied to those funds.

226. The enrichment occurred at the direct expense of the Beneficiary Plaintiff and members of the class, who continued to live in dire conditions while ARC reported compliance and success in its official communications.

227. Defendant ARC further concealed its unjust enrichment by submitting misleading

progress reports to USAID and maintaining public messaging that falsely claimed project completion and service delivery.

228. It would be inequitable for Defendant ARC to retain the benefit of funds designated for the Beneficiary Plaintiff and Members of the Class without having provided them the promised aid and services.

229. The Beneficiary Plaintiffs seek restitution and disgorgement of the value wrongfully retained by ARC, the precise amount of which will be established at trial.

230. **WHEREFORE**, the Beneficiary Plaintiffs respectfully request that the Court enter judgment in their favor and jointly and severally against Defendant ARC, awarding restitution of funds wrongfully retained, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest to the fullest extent allowed by law, and such further relief as the Court may deem just and proper in equity.

**COUNT IX**
**(Conversion / Theft / Embezzlement – Donor Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

231. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

232. Defendant ARC, McGovern and Holtz received the above-referenced donated funds from the Plaintiffs and members of the Class, to be invested in accordance with the Defendants' promises and representations.

233. The Defendants failed to utilize the donated funds as promised and have refused to return the funds to the Plaintiffs and members of the Class despite multiple demands.

234. Instead, the Defendants knowingly misappropriated the Plaintiffs' and class member funds, using or attempting to use the property with the intent to permanently appropriate

it for their own benefit. This was achieved through fraudulent and deceitful practices.

235. To conceal their acts of conversion, theft, and embezzlement, the Defendants disseminated fraudulent communications via email, U.S. mail, and the Internet. These communications falsely claimed that the funds had been used for recovery efforts in Haiti. These deliberate misrepresentations were part of a sustained effort to mislead donors and obscure their misconduct. As a result, the Plaintiffs and Class members were actively deceived and prevented from discovering the Defendants' wrongdoing until recently.

236. As a direct and proximate result of the Defendants' theft, conversion, and/or embezzlement of the Plaintiffs' funds, the Plaintiffs have suffered significant damages of at least $500 million, in addition to consequential damages, including but not limited to attorneys' fees and costs incurred in investigating the Defendants' fraud and pursuing this action.

237. The Defendants' actions were willful, egregious, and undertaken with reckless disregard for the Plaintiffs' rights. This conduct warrants the imposition of punitive or exemplary damages in an amount sufficient to punish the Defendants and deter similar misconduct by others.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' damages for the money and property unjustly stolen, converted and/or embezzled by the Defendants, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT X**
**(Conversion / Theft / Embezzlement – Beneficiary Plaintiff's Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

238. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged

herein.

239. Defendant ARC, through its leadership including Defendants McGovern and Holtz, received substantial federal funds from USAID for the express purpose of delivering aid, infrastructure, and humanitarian services to residents of Canaan, Haiti, including Beneficiary Plaintiffs Frantz Saint Fort, Alix Pierre, Ange Carmel Marie Fontilus, and Eric Placide.

240. These funds were entrusted to ARC under the USAID agreement for the exclusive benefit of the Haitian people, including the Beneficiary Plaintiffs, and not for ARC's general operating costs, unrelated projects, or internal financial obligations.

241. Defendants ARC, McGovern, and Holtz knowingly and intentionally misappropriated substantial portions of the USAID funds, diverting them away from the contractually designated purposes and using them for unauthorized and unrelated expenditures—including, upon information and belief, internal debts, administrative overhead, executive compensation, and unrelated international programs.

242. Despite repeated reporting obligations to USAID and public representations to the Haitian community, Defendants did not return the misappropriated funds or fulfill the promised benefits to the Beneficiary Plaintiffs.

243. In order to conceal their acts of conversion, theft, and embezzlement, Defendants engaged in a pattern of misrepresentation, submitting fraudulent progress reports to USAID and making public declarations of success that did not reflect reality on the ground in Canaan.

244. These deliberate misrepresentations prevented the Beneficiary Plaintiff and other members of the class from discovering the truth until recently, during which time the funds continued to be wrongfully retained or used.

245. As a direct and proximate result of Defendants' conversion, theft, and/or

embezzlement of funds intended for their benefit, the Beneficiary Plaintiff and members of the class have suffered substantial harm, including the loss of permanent housing, clean water, safe infrastructure, and other basic needs that the funds were intended to provide.

246. The Defendants' conduct was willful, deceptive, and undertaken with a conscious disregard for the rights and welfare of the Haitian beneficiaries, warranting the imposition of punitive or exemplary damages to deter similar future misconduct.

**WHEREFORE**, the Beneficiary Plaintiff and members of the class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding damages for the funds wrongfully diverted and misappropriated, punitive damages, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest, and any other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT XI**
**(Intentional Misrepresentation – Donor Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

247. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

248. Defendant Against Defendants ARC, McGovern and Holtz failed to perform as promised and, at all times, had no intention of fulfilling their commitments.

249. The Defendants acted with the intent to enrich themselves at the expense of the members of the Class by defrauding them with false claims, including that the the money collected will be used exclusively to help the people of Haiti.

250. The Defendants made these false promises and representations with the intent to deceive donors, including the Plaintiffs and members of the Class, and induced them to contribute funds that the Defendants knew would not be used for the stated purposes.

251. Relying on these misrepresentations, the Plaintiffs and members of the Class reasonably entrusted, paid, transmitted, turned over, and/or wired no less than $500,000,000 to the Defendants.

252. The reliance of Plaintiffs and Class members on the Defendants' promises was reasonable and directly contributed to the harm they sustained.

253. To conceal their initial misrepresentations, the Defendants issued fraudulent communications through email, U.S. mail, and the Internet. These communications falsely claimed that the funds had been used for recovery efforts in Haiti. These deliberate misrepresentations were part of a sustained effort to mislead donors and conceal their wrongdoing, thereby preventing Plaintiffs and Class members from discovering the truth until recently.

254. The Defendants failed to use the collected funds as promised and have refused to return the funds to the members of the Class, despite repeated demands.

255. Instead, the Defendants knowingly misappropriated the Plaintiffs' and class members' property, using or attempting to use the collected funds with the intent to permanently appropriate them for their own benefit through fraud, deceit, and misrepresentation, rather than for the purposes they had promised.

256. As a direct result of the Defendants' intentional misrepresentations and fraudulent conduct, the Plaintiffs and members of the Class have suffered damages amounting to at least $500,000,000, in addition to consequential damages, including but not limited to attorneys' fees and costs incurred in investigating and pursuing this action.

257. The Defendants' actions were willful, intentional, malicious, and fraudulent, warranting an award of exemplary or punitive damages. Such damages are necessary to

punish the Defendants for their misconduct and to deter others from engaging in similar wrongdoing.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT XII**
**(Intentional Misrepresentation – Beneficiary Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

258. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged herein.

259. Defendants ARC, McGovern, and Holtz knowingly made false and misleading representations to USAID, the Haitian government, and the intended beneficiaries of the Canaan Reconstruction Project—including Plaintiff Frantz Saint Fort and the members of the class,—concerning the nature, scope, and intended outcomes of the USAID-funded work in Haiti.

260. Specifically, the Defendants repeatedly represented that they would construct permanent housing, establish clean water infrastructure, improve sanitation systems, and provide essential public services in Canaan, Haiti.

261. At the time these promises were made, Defendants had no intention of fully performing as represented and were aware that ARC lacked the will or infrastructure to carry out the full scope of the USAID-funded project.

262. Defendants' statements were made with the intent to induce reliance by the U.S. government and the Haitian public, in order to continue receiving USAID funds and maintain

reputational and financial benefits, including inflated executive compensation and organizational prestige.

263. The Beneficiary Plaintiff and members of the class reasonably relied on Defendants' false statements and public assurances that these promised services and infrastructure improvements would be provided. Based on these assurances, they made critical life decisions, including relocating to or remaining in Canaan in expectation of promised aid.

264. The reliance of the Beneficiary Plaintiff and members of the class was reasonable and foreseeable, given the public authority and credibility of ARC and the formal nature of the USAID grant.

265. Defendants compounded their initial misrepresentations by submitting false progress reports to USAID and publicly disseminating misleading information through press releases, reports, and websites falsely indicating that the project had been successfully completed and the beneficiaries served.

266. These misrepresentations were part of a sustained campaign to conceal the truth and prevent USAID, the Beneficiary Plaintiff, and members of the class from discovering the extent of ARC's nonperformance and misappropriation.

267. Despite repeated public claims of success, Defendants failed to deliver the promised housing, water systems, infrastructure, or other services. As a result, the Beneficiary Plaintiff and members of the class were left in vulnerable conditions, with deteriorating housing, unsafe water access, and no meaningful relief.

268. As a direct and proximate result of Defendants' intentional misrepresentations, the Beneficiary Plaintiff and members of the class suffered substantial harm, including exposure to unsafe living conditions, economic displacement, health risks, and deprivation of the promised

aid.

269. Defendants' conduct was willful, intentional, malicious, and fraudulent, warranting the imposition of exemplary or punitive damages in an amount sufficient to punish and deter such egregious misconduct.

**WHEREFORE**, the Beneficiary Plaintiff and members of the class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory and treble damages, punitive damages, attorneys' fees and costs, pre- and post-judgment interest to the maximum extent permitted by law, and any other relief to which Plaintiffs may be entitled at law or in equity.

## COUNT XIII
**(Civil Conspiracy – Donor Plaintiff Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

270. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

271. Upon information and belief, Defendants ARC, McGovern and Holtz conspired, combined, and acted with a unified plan and purpose to defraud and embezzle funds from the Plaintiffs members of the Class. They converted the Plaintiffs' and class members' property for their own use and benefit by engaging in the unlawful acts described herein.

272. Upon information and belief, the Defendants conspired and together they acted with a shared intent to breach their fiduciary and common law duties owed to the Plaintiffs and members of the Class by carrying out the unlawful acts outlined above.

273. At all relevant times, the Defendants committed overt acts in furtherance of their conspiracy, including but not limited to devising and executing a scheme to defraud members of the Class into donating millions of dollars. The Defendants then misappropriated and embezzled

these funds for their own benefit, as part of the common plan and purpose described.

274. To conceal their conspiracy and misconduct, the Defendants disseminated fraudulent communications through email, U.S. mail, and the Internet. These communications falsely represented that the funds were being used for recovery efforts in Haiti. These deliberate misrepresentations were part of a sustained effort to mislead donors and obscure their wrongdoing, preventing Plaintiffs and Class members from uncovering the truth until recently.

275. As a direct and proximate result of the Defendants' actions in furtherance of the conspiracy, the Plaintiffs and members of the Class have suffered significant damages, including harm to their property and economic interests. Plaintiffs have incurred monetary losses totaling no less than $500,000,000, with the exact amount to be proven at trial. These injuries continue to cause harm to Plaintiffs and Class members.

276. The Defendants' conduct was willful, malicious, wanton, and oppressive, demonstrating a conscious and reckless disregard for the rights of the Plaintiffs and class members. This egregious misconduct was carried out with specific intent to harm the Plaintiffs, warranting an award of exemplary or punitive damages. Such damages should be sufficient to punish the Defendants and deter others from engaging in similar misconduct, with the precise amount to be determined at trial.

277. **WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT XIV**
**(Civil Conspiracy – Beneficiary Plaintiff Claim)**

**(Against Defendants ARC, McGovern and Holtz)**

278. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged herein.

279. Upon information and belief, Defendants ARC, McGovern, and Holtz conspired, combined, and acted with a unified plan and purpose to misappropriate and misuse funds allocated by USAID for the benefit of the people of Haiti—specifically the residents of Canaan, including the Beneficiary Plaintiff and members of the Class.

280. The Defendants engaged in a coordinated scheme to divert funds intended for infrastructure, housing, sanitation, and water systems away from their intended beneficiaries and toward unrelated internal purposes, including overhead expenses, debt obligations, and self-enrichment.

281. In furtherance of their conspiracy, the Defendants acted with shared intent to breach the fiduciary and common law duties they owed to the Haitian beneficiaries, and to frustrate the objectives of the USAID-funded Canaan Reconstruction Project.

282. At all relevant times, the Defendants committed overt acts in furtherance of this conspiracy, including but not limited to: (a) making fraudulent representations to USAID regarding project scope and completion; (b) submitting false progress reports; (c) continuing to accept federal funding under false pretenses; and (d) concealing their misappropriation from both USAID and the Haitian public.

283. To conceal their conspiracy and misconduct, Defendants disseminated fraudulent communications through official reports, public statements, and online content. These communications falsely claimed that the promised work in Canaan had been completed and that the residents had received the benefits of the project. These misrepresentations were part of a

sustained effort to mislead the public and obstruct discovery of the truth.

284. As a direct and proximate result of the Defendants' unlawful conspiracy and overt acts committed in furtherance thereof, the Beneficiary Plaintiffs and members of the Class suffered significant harm, including the denial of permanent housing, clean water, and vital infrastructure. These injuries have had lasting physical, economic, and emotional consequences, with damages to be proven at trial.

285. The Defendants' conduct was willful, malicious, wanton, and oppressive, demonstrating a conscious and reckless disregard for the rights of the Beneficiary Plaintiffs and class members. Their egregious conduct was designed to conceal wrongdoing and enrich themselves at the expense of the most vulnerable.

286. Plaintiffs are therefore entitled to compensatory, treble, and punitive damages sufficient to punish the Defendants and deter similar future misconduct.

**WHEREFORE**, the Beneficiary Plaintiffs and members of the Class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory damages, treble damages, punitive damages, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest, and such further relief as the Court deems just and proper.

## COUNT XV
**(Negligent Hiring, Training and Supervision – Donor Plaintiff Claim)**
**(Against Defendants ARC and the Board of Directors of the ARC)**

287. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

288. Defendant ARC and the Board of Directors of the ARC have an affirmative duty to oversee, train, and supervise its executive committee, including the ARC's CEO and COO, as

well as all ARC employees. This duty includes preventing employees from engaging in fraud, misrepresentation, theft, or other unlawful conduct that harms the public and individual donors, including members of the Class.

289. The officers and employees of the ARC who participated in misleading the public and committing fraud were hired under the authority of the ARC and the Board of Directors of the ARC.

290. Between 2010 and 2024, these employees solicited and collected funds from Plaintiffs and members of the Class under false pretenses, committing fraud by misrepresenting the intended purpose and use of the donations.

291. During this time, they also disseminated fraudulent communications through email, U.S. mail, and the Internet. These communications falsely represented that the funds were being used exclusively for recovery efforts in Haiti. These deliberate misrepresentations were part of a sustained effort to mislead donors and obscure their wrongdoing, preventing Plaintiffs and Class members from uncovering the truth until recently.

292. Defendant ARC and its Board of Directors owed an affirmative duty of care to Plaintiffs and members of the Class. Defendants breached this duty by failing to adequately train and supervise their employees, thereby enabling them to engage in fraudulent actions.

293. The Defendants negligently and/or recklessly failed to meet their duty of care in the hiring, supervision, training, and retention of their employees. As a result, ARC employees engaged in fraudulent and illegal conduct, causing harm and damages to members of the Class.

294. The Defendants knew or reasonably should have known that their employees were engaging in fraudulent activities targeting members of the Class and the public at large.

295. Defendants ARC and the Board of Directors of the ARC, knew or should have

known that certain individuals under their employment were engaging in fraudulent schemes, enriching themselves at the expense of Plaintiffs and Class members, who suffered significant economic harm as a result.

296. As a direct result of the Defendants' negligence, Plaintiffs and members of the Class have suffered and continue to suffer economic damages and other injuries.

297. Defendants are especially liable to Plaintiffs and all members of the Class due to their negligence in failing to prevent fraudulent conduct perpetrated by their employees and executives.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' damages caused to them by the Defendants' negligent hiring, training and supervision, including the money and property unjustly stolen, converted and/or embezzled by the Defendants, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT XVI**
**(Negligent Hiring, Training, and Supervision – Beneficiary Plaintiff Claim)**
**(Against Defendants ARC and the Board of Directors of the ARC)**

298. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged herein.

299. Defendant ARC and its Board of Directors owed a duty of care to the Beneficiary Plaintiff and members of the Class, including those residing in Canaan, Haiti, who were the intended third-party beneficiaries of the USAID-funded Canaan Reconstruction Project.

300. This duty included ensuring that ARC personnel—especially senior executives

such as the CEO and COO—were competent, adequately trained, and properly supervised in the management of federal funds and humanitarian aid intended for vulnerable populations.

301. The ARC, acting through its Board of Directors, was responsible for hiring, supervising, training, and monitoring its officers and employees, including those tasked with managing and executing the USAID agreement.

302. Between 2010 and 2024, ARC employees and executives, including Defendants McGovern and Holtz, were placed in positions of authority and entrusted with oversight of tens of millions of dollars in USAID funds designated for the direct benefit of the residents of Canaan, Haiti.

303. These individuals repeatedly engaged in fraudulent conduct, including the misappropriation and diversion of USAID funds, submission of false reports to the U.S. government, and the concealment of the project's non-performance from both USAID and the Haitian public.

304. Despite signs of widespread project failure and internal reports of financial mismanagement, the ARC Board of Directors failed to take corrective action to reassign or remove the responsible parties or to ensure transparency with stakeholders and beneficiaries.

305. Defendant ARC and its Board negligently hired, retained, and failed to supervise executives and project managers who they knew, or reasonably should have known, were unfit to manage a major international aid program.

306. The Board of Directors also failed to establish and enforce appropriate internal controls, training, or oversight mechanisms to detect and prevent misuse of funds and deception of government agencies and beneficiaries.

307. As a result of Defendants' negligent hiring, training, and supervision, the

Beneficiary Plaintiff and members of the Class were denied the housing, infrastructure, clean water, and basic services promised under the USAID agreement.

308. The failure of the Canaan Reconstruction Project, and the continuing harm to the intended beneficiaries, was the foreseeable result of ARC's institutional negligence and failure to exercise reasonable care in its administration of the project.

309. As a direct and proximate result of the Defendants' negligence, the Beneficiary Plaintiff and members of the Class have suffered substantial and continuing harm, including exposure to unsafe living conditions, lack of clean water and sanitation, economic displacement, and loss of access to promised humanitarian aid.

**WHEREFORE**, the Beneficiary Plaintiff and members of the Class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC and its Board of Directors, awarding compensatory damages for the harm caused by Defendants' negligent hiring, training, and supervision, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest, and such further relief as the Court deems just and proper.

## COUNT XVII
**(Intentional Infliction of Emotional Distress – Donor Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

310. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

311. Defendant ARC's, McGovern's and Holtz's actions toward the Plaintiffs and other members of the Class constituted extreme and outrageous conduct and was done intentionally.

312. Defendants fraudulently coerced members of the class to donate money with a false promise of using the money to prevent more suffering in Haiti.

313. Defendants' extreme and outrageous conduct subjected the class members to emotional trauma, humiliation, severe emotional distress.

314. Defendants' actions and the ensuing damage to class members were foreseeable.

315. As a result of Defendants' intentional actions, the Plaintiffs sustained injuries and damages for which each Defendant is individually and severally liable to Plaintiffs.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiffs' damages caused to them by the Defendant's intentional infliction of emotional distress, including reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT XVIII**
**(Intentional Infliction of Emotional Distress – Beneficiary Plaintiff Claim)**
**(Against Defendants ARC, McGovern, and Holtz)**

316. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

317. Defendants ARC, McGovern, and Holtz engaged in extreme and outrageous conduct by knowingly and intentionally misrepresenting that they would provide essential aid-such as permanent housing, clean water, and basic infrastructure-to the residents of Canaan, Haiti, including the Beneficiary Plaintiffs and members of the Class.

318. Defendants accepted and retained tens of millions of dollars in USAID funding earmarked for urgent humanitarian relief, while knowingly failing to implement or deliver the promised programs, all while publicly misrepresenting their success.

319. The conduct of the Defendants was not only fraudulent but was undertaken with full knowledge that their failure to deliver critical aid to the intended beneficiaries would result

in prolonged suffering, displacement, and dangerous living conditions.

320. The Beneficiary Plaintiff and class members, including many with families with children, elderly residents, and persons with disabilities, were subjected to degrading, inhumane, and unsanitary conditions-conditions which Defendants publicly claimed had been corrected or improved.

321. The Defendants' deliberate concealment of the project's failure, coupled with their efforts to avoid accountability while continuing to exploit the suffering of Haitian residents for institutional gain, constitutes conduct that is extreme and intolerable in a civilized society.

322. As a direct and foreseeable result of the Defendants' intentional misconduct, the Beneficiary Plaintiff and members of the Class suffered severe emotional distress, trauma, anxiety, humiliation, and a sense of abandonment and betrayal.

323. The emotional and psychological harm suffered by the Beneficiary Plaintiff and members of the class was exacerbated by the fact that Defendants not only failed to deliver promised aid, but falsely reported that they had succeeded-causing the Beneficiary Plaintiff and members of the class to question their own experiences and remain in false hope of improvements that never came.

324. Defendants acted willfully, maliciously, and with reckless disregard for the emotional and physical well-being of the Haitian people, including the Beneficiary Plaintiff and members of the Class.

325. **WHEREFORE**, the Beneficiary Plaintiff and members of the Class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory and punitive damages for the intentional infliction of emotional distress, attorneys' fees and costs, pre-judgment and post-judgment

interest, and such other relief as the Court deems just and proper.

**COUNT XIX**
**(Negligent Infliction of Emotional Distress – Donor Plaintiff Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

326. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

327. Defendants ARC, McGovern, and Holtz engaged in extreme and outrageous conduct by deliberately and repeatedly misrepresenting to the public, including Donor Plaintiffs and members of the Class, that 100% of donated funds would be used exclusively to provide emergency relief and long-term recovery to victims of the 2010 Haiti earthquake.

328. These representations were disseminated through nationally televised interviews, press conferences, digital media, direct solicitations, and ARC's official website, all designed to emotionally appeal to and mobilize donors in the wake of a catastrophic humanitarian crisis.

329. Defendants knew these representations were false at the time they were made. They understood that significant portions of the donated funds would be diverted to unrelated operations, administrative overhead, self-dealing transactions, and debt obligations from prior mismanagement.

330. Despite their knowledge, Defendants persisted in their false messaging for over a decade, weaponizing the suffering of Haitian women, children, and families as fundraising tools while secretly misallocating hundreds of millions of dollars.

331. Defendants' conduct was not merely negligent-it was calculated and malicious. They exploited the empathy and generosity of the Donor Plaintiffs and the general public to enrich themselves and preserve the ARC's public image, while knowingly violating donor trust and moral expectations.

332. Donor Plaintiffs and members of the Class reasonably relied on the Defendants' statements, often making significant financial sacrifices to donate in good faith, believing they were helping to save lives and rebuild communities.

333. As a direct result of the Defendants' deceit and betrayal, Donor Plaintiffs experienced profound emotional harm, including grief, shame, moral injury, anxiety, and psychological distress, upon learning that their contributions had been misused and that the intended beneficiaries continued to live in squalor.

334. The emotional harm was compounded by Defendants' persistent efforts to conceal the misuse of funds, publish fabricated success stories, and suppress accountability-causing Plaintiffs to live for years under the false belief that they had made a meaningful difference.

335. Defendants acted intentionally, outrageously, and with reckless disregard for the emotional well-being of those whose trust they deliberately abused. Their conduct shocks the conscience and is wholly incompatible with the values of a charitable institution.

336. As a direct and foreseeable result of Defendants' intentional infliction of emotional distress, Donor Plaintiffs and members of the Class have suffered damages warranting the imposition of both compensatory and punitive damages.

**WHEREFORE**, the Donor Plaintiffs and members of the Class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory and punitive damages for intentional infliction of emotional distress, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT XX**
**(Negligent Infliction of Emotional Distress – Beneficiary Plaintiff Claim)**
**(Against Defendants ARC, McGovern, and Holtz)**

337. Plaintiffs incorporate the allegations of paragraphs 1–126 as if fully realleged herein.

338. Defendants ARC, McGovern, and Holtz owed a duty of care to the Beneficiary Plaintiffs and members of the Class—residents of Canaan, Haiti who were the intended recipients of critical humanitarian aid and public infrastructure funded by the USAID agreement.

339. This duty included an obligation to honestly and competently administer the USAID funds, to ensure the delivery of promised housing, sanitation, and clean water services, and to avoid placing the intended beneficiaries in situations of foreseeable harm.

340. Defendants, acting in concert, breached this duty of care by negligently managing, misappropriating, and failing to deliver the federally funded relief intended to address life-threatening conditions following the 2010 Haiti earthquake.

341. Defendants further breached their duty by publicly misrepresenting the success of the Canaan Reconstruction Project and concealing their failure to perform. This deprived the Plaintiff Beneficiary and members of the classof both actual aid and the ability to seek help from other sources, deepening their sense of abandonment and despair.

342. As a result of the Defendants' negligence, the Beneficiary Plaintiff and class members were left in extreme poverty, deteriorating shelter, unsanitary conditions, and without basic services promised under the USAID project.

343. These living conditions, combined with the betrayal of trust and public misrepresentation of success, foreseeably caused emotional and psychological harm to the Beneficiary Plaintiff and members of the class, including trauma, anxiety, distress, and loss of dignity.

344. The Beneficiary Plaintiff's and members of the class' emotional injuries were the

direct and proximate result of Defendants' negligent conduct. But for Defendants' mismanagement and concealment, the Beneficiary Plaintiff and members of the class would not have been left to live in unsafe and dehumanizing conditions for over a decade.

345. Each Defendant is individually and jointly liable for the emotional and psychological harm suffered by the Beneficiary Plaintiff and members of the Class.

346. WHEREFORE, the Beneficiary Plaintiff and members of the Class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding damages for negligent infliction of emotional distress, attorneys' fees and costs, pre-judgment and post-judgment interest to the maximum extent permitted by law, and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT XXI**
**(Statutory Claim for Fraudulent Conveyance – Donor Plaintiffs' Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

347. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

348. Defendants ARC, McGovern, and Holtz engaged in extreme and outrageous conduct by deliberately and repeatedly misrepresenting to the public, including Donor Plaintiffs and members of the Class, that 100% of donated funds would be used exclusively to provide emergency relief and long-term recovery to victims of the 2010 Haiti earthquake.

349. These representations were disseminated through nationally televised interviews, press conferences, digital media, direct solicitations, and ARC's official website, all designed to emotionally appeal to and mobilize donors in the wake of a catastrophic humanitarian crisis.

350. Defendants knew these representations were false at the time they were made. They understood that significant portions of the donated funds would be diverted to unrelated operations, administrative overhead, self-dealing transactions, and debt obligations from prior

mismanagement.

351. Despite their knowledge, Defendants persisted in their false messaging for over a decade, weaponizing the suffering of Haitian women, children, and families as fundraising tools while secretly misallocating hundreds of millions of dollars.

352. Defendants' conduct was not merely negligent—it was calculated and malicious. They exploited the empathy and generosity of the Donor Plaintiffs and the general public to enrich themselves and preserve the ARC's public image, while knowingly violating donor trust and moral expectations.

353. Donor Plaintiffs and members of the Class reasonably relied on the Defendants' statements, often making significant financial sacrifices to donate in good faith, believing they were helping to save lives and rebuild communities.

354. As a direct result of the Defendants' deceit and betrayal, Donor Plaintiffs experienced profound emotional harm, including grief, shame, moral injury, anxiety, and psychological distress, upon learning that their contributions had been misused and that the intended beneficiaries continued to live in squalor.

355. The emotional harm was compounded by Defendants' persistent efforts to conceal the misuse of funds, publish fabricated success stories, and suppress accountability—causing Plaintiffs to live for years under the false belief that they had made a meaningful difference.

356. Defendants acted intentionally, outrageously, and with reckless disregard for the emotional well-being of those whose trust they deliberately abused. Their conduct shocks the conscience and is wholly incompatible with the values of a charitable institution.

357. As a direct and foreseeable result of Defendants' intentional infliction of emotional distress, Donor Plaintiffs and members of the Class have suffered damages warranting the imposition of both compensatory and punitive damages.

**WHEREFORE**, the Donor Plaintiffs and members of the Class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, awarding compensatory and punitive damages for intentional infliction of emotional distress, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT XXII**
**(Statutory Claim for Fraudulent Conveyance – Beneficiary Plaintiff Claim)**
**(Against Defendants ARC, McGovern and Holtz)**

358. Plaintiffs incorporate the allegations of paragraphs 1-126 as if fully realleged herein.

359. Upon information and belief, Defendants ARC, McGovern, and Holtz devised and executed a scheme to unlawfully transfer assets—received through the USAID-funded Canaan Reconstruction Project and related programs—among themselves and third parties for the purpose of shielding those assets from legitimate claims by the Beneficiary Plaintiff and members of the Class.

360. These transfers were made with the actual intent to hinder, delay, or defraud the Beneficiary Plaintiff and Class members, who were entitled to the benefit of those funds in the form of housing, sanitation, and essential public infrastructure.

361. The assets transferred included, upon information and belief, diverted federal funds, real or personal property acquired with misappropriated project funds, and financial distributions that were not supported by any reasonable or fair equivalent value.

362. At the time of these transfers, Defendants knew or should have known that the intended beneficiaries of the USAID agreement had not received the promised aid and were actively being harmed by the lack of performance on the project.

363. These fraudulent conveyances were undertaken in violation of applicable state and federal statutes prohibiting the transfer of assets to avoid legal responsibility, including the rights of third-party beneficiaries to enforce obligations arising from government-funded aid programs.

364. As a direct result of these unlawful transfers, the Beneficiary Plaintiff and members of the Class were further deprived of both the aid promised and any remedy in equity, as **Defendants** deliberately attempted to insulate themselves from liability.

WHEREFORE, the Beneficiary Plaintiff and members of the Class respectfully request that the Court enter judgment in their favor and jointly and severally against Defendants ARC, McGovern, and Holtz, declaring the fraudulent conveyances void as to Plaintiffs, ordering the return or disgorgement of fraudulently transferred assets, awarding compensatory damages, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable that are raised herein, or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1. Award Plaintiffs punitive damages in the sum of not less than $150,000,000.00 or an amount otherwise to be decided by a jury.
2. Award Plaintiffs compensatory damages in the sum of not less than $ 500,000.00 to be proven at trial.
3. Award restitution and disgorgement

4. Award accounting of Red Cross funds raised for Haiti and expenditures related to Haiti.
5. Find that all defendants are jointly and severally liable for all damage caused to Plaintiffs;
6. Award Plaintiffs litigation expenses, including reasonable attorneys' fees, costs, and disbursements.
7. Grant injunctive relief to prevent Defendants from (a) transferring assets to each other and to others to place them outside of the reach of creditors and (b) further deceptive practice
8. Grant such other relief that the Court deems just and proper.

Miami, Florida
Dated: this 24th Day of June 2025

Respectfully submitted,

/s/ Wil Morris
MORRIS LEGAL, PC

By: Wil Morris Esquire
2800 Biscayne Blvd, Suite 530
Miami, Florida 33137
(P): 305-444-3437
(F): 305-444-3457
Florida Bar No.: 069493