UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24617-CIV-ALTONAGA/Reid

**THE HAITIAN DIASPORA
POLITICAL ACTION
COMMITTEE**, *et al.*,

    Plaintiffs,
v.

**THE AMERICAN RED CROSS**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendants, The American Red Cross (the "Red Cross"), Gail J. McGovern ("CEO McGovern"), Cliff Holtz, and The Board of Directors of the Red Cross's (the "Board['s]")[1] Motion to Dismiss the Third Amended Class Action Complaint [ECF No. 69]. Plaintiffs, Nathaniel Ballantyne, Cridikel Truthbay, Renee Hasler, Darlene P. Licin, Alix Pierre, and Frantz Saint Fort, filed a Response [ECF No. 76]; to which Defendants filed a Reply [ECF No. 77]. Plaintiffs also filed a Sur-Reply [ECF No. 83]; and Defendants filed a Sur-Sur-Reply [ECF No. 88]. The Court has reviewed the Third Amended Class Action Complaint ("TAC") [ECF No. 68], the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted.

### I. BACKGROUND

This putative class action stems from allegations that Defendants — the Red Cross and its leadership — mismanaged and misappropriated over $500 million in charitable donations and an

---

[1] The Red Cross does not have a Board of Directors; it has a Board of Governors. (*See* Mot. 5 n.1).

additional $30 million in funding from the U.S. Agency for International Development ("USAID"), all of which were intended for relief efforts in Haiti after the January 12, 2010 earthquake and ensuing disasters. (*See* TAC ¶¶ 1–3, 17–18, 20, 48–50, 59, 109–12). Plaintiffs "seek[] to hold [] Defendants accountable" for an alleged "systemic pattern of fraud, misrepresentation, and unjust enrichment." (*Id.* 6 (alterations added)).[2] The Court previously dismissed Plaintiffs' First Amended Complaint ("FAC") [ECF No. 17] and Second Amended Complaint ("SAC") [ECF No. 63] without prejudice, affording Plaintiffs one final opportunity to amend. (*See* April 1, 2025 Order [ECF No. 62]; June 12, 2025 Order [ECF No. 67]). Plaintiffs did so with their Third Amended Complaint.

By way of brief background, "[o]n January 12, 2010, a 7.0-magnitude earthquake struck southern Haiti, toppling buildings and power lines, resulting in widespread devastation" and loss of life. (TAC ¶¶ 3–4 (alteration added); *see also id.* 3 n.2). In its aftermath, the Red Cross launched a global fundraising campaign, vowing to rebuild Haiti with homes, roads, and essential relief services. (*See id.* 4–5, ¶¶ 6–7). CEO McGovern "publicly announced that the [Red Cross] organization stood ready to raise funds to assist Haiti in its recovery." (*Id.* ¶ 5 (alteration added)).

Within a week of the disaster, the Red Cross circulated footage of Haiti's destruction to media outlets to allegedly "manipulate and pressure individuals into contributing as much as possible." (*Id.* ¶ 1; *see also id.* ¶¶ 111, 113). The organization assured donors — through television, online ads, and public statements — that their donations would aid earthquake victims and the Haitian people. (*Id.* ¶ 2; *see also id.* ¶¶ 9, 128–29). Yet, $150 million went to cover the Red Cross's own financial deficit and another $400 million went to unrelated projects. (*See id.* ¶ 13; *see also id.* ¶¶ 17, 109, 138, 164). The alleged diversion of funds, Plaintiffs claim, crippled

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

recovery efforts; and critical infrastructure projects — including road rehabilitation and sanitation improvements — were "either severely delayed or never implemented." (*Id.* ¶ 27; *see also id.* ¶ 28).

Around this time, USAID awarded the Red Cross a $14 million grant "to provide urban planning assistance, expand infrastructure services, and promote safer housing construction in Canaan, Haiti." (*Id.* 5). According to Plaintiffs, these projects were unsuccessful, and the funds from the USAID grant "were fraudulently claimed and disbursed based on false certifications that the required work in Canaan had been completed." (*Id.*; *see also id.* ¶¶ 18–23, 96–103). Significant portions of the promised infrastructure were either not constructed or left grossly incomplete. (*See id.*).

Plaintiffs bring this putative class action against Defendants on behalf of two subclasses. (*See id.* 4, ¶¶ 38–42). The first is a Class of Donors, comprising thousands of individuals who donated to the Red Cross between 2010 and 2024 in the belief that their contributions would aid Haiti's earthquake relief efforts ("Donor Plaintiffs"). (*See id.*). The second is a Class of Beneficiaries, consisting of the alleged intended third-party beneficiaries of the USAID-funded "Canaan Reconstruction Project" ("Beneficiary Plaintiffs"). (*See id.*).[3]

In their Third Amended Complaint, Plaintiffs assert 22 claims. (*See generally id.*). The Donor Plaintiffs assert nine claims against the Red Cross, CEO McGovern, and Holtz: fraud involving solicitations for donations (Count I) (*see id.* ¶¶ 127–43); breach of implied contract (Count III) (*see id.* ¶¶ 157–70); breach of implied covenant of good faith and fair dealing (Count

---

[3] Named Plaintiffs Ballantyne, Hasler, Licin, and Truthbay seek to represent the Class of Donors as the "Donor Plaintiffs"; while Saint Fort seeks to represent the Class of Beneficiaries as the "Beneficiary Plaintiff." (*See* TAC ¶¶ 38–42). Pierre appears only in the Third Amended Complaint's caption and other allegations that lump Pierre as a "Plaintiff" alongside Ange Carmel Marie Fontilus and Eric Placide. (*See generally id.* ¶¶ 147, 173, 194, 239).

V) (*see id.* ¶¶ 184–92); conversion/theft/embezzlement (Count IX) (*see id.* ¶¶ 231–37); intentional misrepresentation (Count XI) (*see id.* ¶¶ 247–57); civil conspiracy (Count XIII) (*see id.* ¶¶ 270–77); intentional infliction of emotional distress (Count XVII) (*see id.* ¶¶ 310–15); negligent infliction of emotional distress (Count XIX) (*see id.* ¶¶ 326–36); and fraudulent conveyance (Count XXI) (*see id.* ¶¶ 347–57).  The Donor Plaintiffs additionally bring a claim of negligent hiring, training, and supervision against the Red Cross and the Board (Count XV) (*see id.* ¶¶ 287–97); and a claim of unjust enrichment against the Red Cross (Count VII) (*see id.* ¶¶ 204–16).

The Beneficiary Plaintiff asserts nine claims against the Red Cross, CEO McGovern, and Holtz: fraud involving the agreement with USAID funds (Count II) (*see id.* ¶¶ 144–56); breach of contract (Count IV) (*see id.* ¶¶ 171–83); breach of implied covenant of good faith and fair dealing (Count VI) (*see id.* ¶¶ 193–203); conversion/theft/embezzlement (Count X) (*see id.* ¶¶ 238–46); intentional misrepresentation (Count XII) (*see id.* ¶¶ 258–69); civil conspiracy (Count XIV) (*see id.* ¶¶ 278–86; intentional infliction of emotional distress (Count XVIII) (*see id.* ¶¶ 316–25); negligent infliction of emotional distress (Count XX) (*see id.* ¶¶ 337–46); and fraudulent conveyance (Count XXI) (*see id.* ¶¶ 358–64).  The Beneficiary Plaintiff additionally asserts one claim of unjust enrichment against the American Red Cross (Count VII) (*see id.* ¶¶ 217–30); and one claim of negligent hiring, training, and supervision against the Red Cross and the Board (Count XVI) (*see id.* ¶¶ 298–309).

Defendants move to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(1), asserting both facial and factual challenges to Plaintiffs' standing to sue.

## II. LEGAL STANDARDS

***Rule 12(b)(1).***  "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  It is presumed that a federal court lacks jurisdiction

4

in a case until the party asserting a claim demonstrates the court has jurisdiction over the subject matter. *See id.* (citations omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be either facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (citations omitted). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (alterations adopted; citation and quotation marks omitted).

A factual attack, by contrast, challenges the existence of subject matter jurisdiction using material *outside* the complaint. *See id.* (citation omitted). Plaintiffs bear the burden of alleging facts demonstrating each element of standing; and if the Court determines there is no standing and thus no subject matter jurisdiction, it cannot hear the merits of the case. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005) (citing *Univ. of S. Ala. V. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).

**Standing.** Article III of the U.S. Constitution vests "[t]he judicial Power of the United States . . . in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1 (alterations added). Section 2 of Article III defines the scope of "[t]he judicial Power" of the United States. *Id.* (alteration added). That power "shall extend" only to "Cases" and "Controversies" of the types enumerated in section 2. *Id.* § 2. This limit on the judiciary's power is integral to the Constitution's separation-of-powers structure. *See Djadju v. Vega*, 32 F.4th 1102, 1108 (11th Cir. 2022) (citation omitted).

5

In fact, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (alteration added; quotation marks omitted; quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). And "[t]o satisfy the 'case' or 'controversy' requirement, a plaintiff in a matter must have standing to sue." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (alteration added; citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)).

Thus, standing to bring suit is a necessary component of subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (citations omitted). It involves three elements — to sue in federal court, a party asserting a claim "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). If a plaintiff lacks standing, the court does not have subject matter jurisdiction over the case. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

### III. DISCUSSION

**A. Donor Plaintiffs**

Defendants once again mount both a facial and factual challenge to the Donor Plaintiffs' standing. (*See* Mot. 15–22). In the facial challenge, Defendants dispute only the first two elements of standing — the existence of injury in fact and causation — arguing the Donor Plaintiffs "cannot establish any injury in fact with respect to their claims based on the Red Cross's post-donation conduct;" and they fail to plead "allegations sufficient to trace any purported injury to the allege[d]

6

misrepresentations in connection with their fraudulent solicitation claims." (*Id.* 15 (alteration added)); *see also TransUnion LLC*, 594 U.S. at 423 (citation omitted). In their factual challenge, Defendants contend the Donor Plaintiffs cannot show an injury in fact because "the Red Cross has no record of any of the alleged donations." (*Id.* 20; *see also id.* 21–22). Because Defendants' factual attack is meritorious, the Court does not address the facial challenge. *See, e.g.*, *Alston v. James A. Haley Veterans Hosp.*, No. 8:12-cv-1393, 2014 WL 4452683, at *2 (M.D. Fla. Sep. 9, 2014) ("Because the factual attack is dispositive, the Court does not address Defendant's facial attack.").

"[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) (alteration added; citation omitted). When faced with a factual challenge to subject matter jurisdiction, "the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citations omitted). Unlike in a facial attack, in a factual challenge no "presumptive truthfulness attaches to plaintiff's allegations[;]" instead "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence*, 919 F.2d at 1529 (alteration added; citation omitted).

Defendants attach a Declaration from Daniel Guelzow, Director of Gift Processing. (*See* Mot., Ex. B, Decl. of Daniel Guelzow "Guelzow Decl." [ECF No. 69-2] ¶ 2). Guelzow "conducted searches of the Donor Information of the American Red Cross from 2000 forward for any donations made by the [Donor Plaintiffs]" but found no record of any donations made by any of the named Donor Plaintiffs (*id.* at ¶ 7 (alteration added); *see also id.* ¶¶ 8–11), even though "[d]onor

7

information is recorded at or near the time each donation is made" (*id.* ¶ 4 (alteration added)).[4]

Plaintiffs argue that Defendants' factual challenge to Plaintiffs' standing is improper because "the jurisdictional facts overlap the elements of the claim[.]" (Resp. 14 (alteration added)). Plaintiffs also insist that Defendants' analysis is incomplete because Guelzow's search did not capture donations made through intermediaries. (*See* Resp. 14–15). Neither argument persuades.

When a factual attack is "inextricably intertwined with the merits of the lawsuit," "[t]he proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case[.]" *Lawrence*, 919 F.2d at 1529 (alterations added; citations and quotation marks omitted). A challenge is inextricably intertwined with the merits when "[t]he pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the . . . claim." *Id.* (alterations added).

Plaintiffs contend that Defendants' factual challenge overlaps with an element of Plaintiffs' claim, that is, "whether Plaintiffs donated in reliance on fraudulent solicitations[.]" (Resp. 14 (alteration added)). To satisfy the standing requirement, however, Plaintiffs must show that the Donor Plaintiffs suffered an injury in fact by *donating*. Resolving the question of whether Plaintiffs donated will not resolve whether Plaintiffs donated in reliance on any allegedly fraudulent statements; in other words, the resolution of the factual standing debate will not "resolve both the question of subject matter jurisdiction and a necessary element of" Plaintiffs' claim. *Lawrence*, 919 F.2d at 1529. Consequently, the Court is "free to weigh the evidence and satisfy

---

[4] The Red Cross does have a record of a single donation on May 21, 2013 by an individual named Renee Hasler, but a licensed private investigator and fraud examiner confirmed this individual is not the Donor Plaintiff named Rene Hasler based on a review of birthdates and social security numbers. (*See* Mot. 21 (citing Guelzow Decl. ¶ 11); *see also id.*, Ex. C, Decl. of Salvador Rodriguez ("Rodriguez Decl.") [ECF No. 69-3] ¶ 4).

itself as to the existence of its power to hear the case." *Id.* (citation omitted).

Because Defendants have mounted a factual attack concerning whether the Donor Plaintiffs donated, Plaintiffs now have the burden to prove by a preponderance of the evidence that jurisdiction exists. *See OSI, Inc.*, 285 F.3d at 951 (citations and footnote call number omitted). Plaintiffs fail to make this showing. While Plaintiffs dispute the completeness of the Red Cross's donor records — arguing the records do not encompass third party donations, campaign codes, anonymized short-codes, or different identifiers — Plaintiffs have not rebutted Defendants' evidence or given the Court reason to believe the Donor Plaintiffs in fact made donations. (*See* Resp. 14). Plaintiffs do not offer any documentary evidence of their alleged donations, nor do they identify which intermediaries they donated through, if any.[5] (*See generally id.*; *see also* Sur-Reply).

Defendants cite *Salerno v. Florida Southern College*, 488 F. Supp. 3d 1211, 1216 (M.D. Fla. 2020), and *Estate of Duckett v. Cable News Network LLLP*, No. 06-cv-444, 2007 WL 2050935, at *5 (M.D. Fla. 2007), in support of their factual standing argument. (*See* Mot. 21–22). These cases are instructive. In *Salerno*, a defendant college challenged a mother's standing by showing tha, although she claimed to have paid her daughter's college tuition, it had no account in her name. *See* 488 F. Supp. 3d at 1216–17. Because the mother did not rebut the college's evidence or point to any proof of payment aside from the allegations in her amended complaint, the court dismissed the mother for lack of standing. *Id.*; *see also Est. of Duckett*, 2007 WL 2050935, at *5 ("Plaintiffs

---

[5] To the extent Plaintiffs seek to use previously filed Donor Plaintiff declarations to rebut Defendants' evidence; their attempt falls short because the declarations do not sufficiently rebut Defendants' evidence. (*See* Resp. in Opp. to Defs.' Mot. to Dismiss the FAC, Exs. 1–5 [ECF Nos. 60-1–60-5]). Although one declaration states the Donor Plaintiffs were "prepared to provide documentary evidence demonstrating [that Donor Plaintiff Ballantyne] made contributions" (Resp. in Opp. to Defs.' Mot. to Dismiss the FAC, Ex. 2, Decl. of Nathanial Ballantyne [ECF No 60-2] ¶ 11 (alteration added)), Plaintiffs have not supplied that evidence (*see generally* Dkt.).

have failed to establish that they even contributed any funds to the Charitable Trust. . . . [T]he sole trustee . . . avers that neither [of Plaintiffs' alleged] check[s was] cashed or negotiated. Plaintiffs have not submitted any evidence to rebut this statement." (alterations added)).

Here, Plaintiffs' failure to supply the Court with any evidence to rebut Defendants' factual challenge is similarly fatal. *See Est. of Duckett*, 2007 WL 2050935, at *5–6; *see also Salerno*, 488 F. Supp. 3d at 1216–17. This failure is particularly troubling given the procedural history of this case.

Defendants first raised this exact factual challenge to the Donor Plaintiffs' standing at a January 21, 2025 status conference. (*See* Feb. 13, 2025 Order [ECF No. 59] ("Defendants fully articulated the factual and facial standing challenges they intended to raise in response to the First Amended Class Action Complaint at the January 21, 2025 hearing.")). And Defendants continued to raise this exact factual challenge to the Donor Plaintiffs' standing in their two motions to dismiss the prior iterations of Plaintiffs' pleading. (*See generally* Mot. to Dismiss FAC [ECF No. 53]; Mot. to Dismiss SAC [ECF No. 64]).

On July 23, 2025 the Court granted Defendants' Motion to Dismiss the Third Amended Complaint by default after Plaintiffs failed to respond to that Motion. (*See* July 23, 2025 Order [ECF No. 70]). Plaintiffs then filed a Motion for Relief from Judgment Pursuant to Rule 60(b)(1) [ECF No. 71], which the Court granted [ECF No. 75] on August 25, 2025 — allowing Plaintiffs to file their response to Defendants' Motion to Dismiss the TAC by August 28, 2025. Remarkably, despite receiving two additional chances to amend and extra time to respond to Defendants' factual attack to the Donor Plaintiffs' standing, Plaintiffs provide no evidence rebutting Defendants' argument that the Donor Plaintiffs never donated to the Red Cross. Because Plaintiffs do not rebut

10

Defendants' evidence or otherwise allege an alternative way that Defendants injured the Donor Plaintiffs, the Court concludes the Donor Plaintiffs lack Article III standing.

### B. Beneficiary Plaintiff

As explained, to establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a causal connection between the injury and the challenged conduct, and (3) that the injury is likely to be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560–61. Defendants mount both facial and factual challenges to the Beneficiary Plaintiff's standing. (*See* Mot. 9–15; Reply 11–14). In this instance, because Defendants prevail on their facial challenge, the Court does not wade into the factual one. *See Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1071 n.2 (S.D. Fla. 2020) ("Because Plaintiff's allegations . . . do not survive a facial attack, the Court need not analyze whether they survive a factual attack." (alteration added)).

Defendants contend that the Beneficiary Plaintiff does not allege a legally protected interest in the USAID Agreement and, thus, cannot show an injury in fact. (*See* Mot. 10–13). Defendants also argue that the Beneficiary Plaintiff fails to trace any injury to Defendants' conduct, and they cannot redress his purported injury. (*See id.* 13–15).

As stated, "'[f]acial challenges to subject matter jurisdiction are based solely on the allegations in the complaint'" and, when considering facial challenges, the Court takes the complaint's allegations as true. *Fraga*, 2022 WL 19486310, at *3 (alteration added; quoting *Carmichael*, 572 F.3d at 1279). Still, to survive a facial challenge under Rule 12(b)(1), Plaintiffs "must allege facts that, taken as true, 'plausibly' state that the elements of standing are met." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020)). Further, in a putative class action, the named plaintiffs representing "a class must allege and show that they personally have been

injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (quotation marks and citations omitted).

### 1. Injury in Fact

To establish an injury in fact, the Beneficiary Plaintiff must first demonstrate that Defendants have invaded some "legally protected interest" he possesses. *Lujan*, 504 U.S. at 560. The Beneficiary Plaintiff claims to have an interest protected by contract — specifically, the USAID Agreement between USAID and the Red Cross. (*See* Resp. 6, 17). Plaintiffs allege that "[i]n or around 2011, Defendants . . . entered into a formal agreement with [USAID], under which [the Red Cross] agreed to perform specific relief and development work in Canaan, Haiti[.]" (TAC ¶ 146 (alterations added); *see also id.* ¶¶ 96, 172, 194, 218, 239). Plaintiffs do not state that the Beneficiary Plaintiff was a party to the USAID Agreement; thus, as a non-party, the Beneficiary Plaintiff "can only establish standing if he was an intended third-party beneficiary of the [USAID Agreement]." *Bochese*, 405 F.3d at 981 (alteration added).

It is well-settled that "[t]he question of whether, for standing purposes, a non-party to a contract has a legally enforceable right therein is a matter of state law." *Id.* (alteration added; collecting cases). Among third-party beneficiaries, Florida law distinguishes between intended beneficiaries, who have enforceable rights arising from the contract, and incidental beneficiaries, who have no enforceable contract rights. *See id.* (citations omitted). To endow a third-party beneficiary with a legally enforceable right, the contracting "parties' intent must be specific and clearly expressed in the contract[.]" *Singh v. Royal Caribbean Cruises*, 576 F. Supp. 3d 1166, 1190 (S.D. Fla. 2021) (alteration added; citation omitted). While the third party need not be explicitly named, *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 812 (Fla. 3d DCA 1985), the third party must belong to a "well-defined class of readily identifiable

12

persons" that the contract intends to benefit, *Singh*, 576 F. Supp. 3d at 1190 (citation and quotation marks omitted).

Plaintiffs allege that the Beneficiary Plaintiff is "a resident of Canaan," making him an "intended third-party beneficiar[y] of the USAID-funded project earmarked exclusively for relief efforts in Canaan." (TAC ¶ 42 (alteration added)). Not so, say Defendants. Defendants argue that "members of the public in a particular geographic area that may benefit from services provided to that area under a contract are not intended beneficiaries." (Mot. 12–13 (citations omitted)). The Court agrees with Defendants.

Viewing the TAC in the light most favorable to Plaintiffs, the allegations are based solely on the named Beneficiary's status as a member of the public of Canaan. (*See* TAC ¶ 82 ("Defendant [the Red Cross] represented that it would construct permanent housing, provide clean water, and implement urban infrastructure improvements *for the Canaan community*.") (alteration and emphasis added); ¶ 42 (defining the narrowly defined class of intended beneficiaries as individuals "residing in Canaan")). This is not a limited class of intended beneficiaries. To the contrary, according to Plaintiffs, this limited class "consists of *thousands* of individuals living in Canaan, Haiti[.]" (*Id.* ¶ 119 (emphasis added)). *Cf Groover v. Polk Cnty. Bd. of Cnty. Comm'ns*, 460 F. Supp. 3d 1242, 1253 (M.D. Fla. 2020) (dismissing breach-of-contract-claims because the complaint's allegations were based on the deceased's "status as a member of the general public receiving emergency medical services"); *Btesh v. City of Maitland*, No. 10-cv-71, 2011 WL 3269647, at *41 (M.D. Fla. July 29, 2011) (finding that a plaintiff who benefitted from an interlocal agreement "solely as a member of the general public receiving emergency services within the City of Maitland" was an incidental beneficiary to the contract (citation omitted)).

13

Plaintiffs' reliance on *Various Insurers v. General Electric International, Inc.*, 131 F.4th 1273 (11th Cir. 2025), does nothing to alter this conclusion. In *Various Insurers*, the Eleventh Circuit, applying federal common law,[6] considered whether a third-party entity that was referenced in a contract was an intended beneficiary. *See id.* at 1278–79. The Eleventh Circuit found that because the contract directly referenced the third-party entity and described the third-party entity's explicit rights in relation to the contract, the third-party entity was an intended beneficiary. *See id.*

Plaintiffs' allegations are not comparable. Plaintiffs do not allege that the Beneficiary Plaintiff was directly referenced, nor that the USAID Agreement vested the residents of Canaan with any explicit rights in relation to the Agreement. Consequently, Plaintiffs allegations fall short of demonstrating why the Beneficiary Plaintiff is an intended beneficiary instead of an incidental beneficiary.[7]

Ultimately, the Beneficiary Plaintiff has once again failed to identify a legally protected interest on which to ground his claims. Without such an interest, he cannot allege injury in fact, and the Court need not reach Defendants' standing arguments regarding causation or redressability. *See Hannes v. Conf. on Jewish Material Claims Against Germany, Inc.*, No. 11-80719-Civ, 2012

---

[6] The Eleventh Circuit applied federal common law only because the parties agreed and framed their arguments relying on federal common law. *See Various Insurers*, 131 F.4th at 1276. The parties here have reached no such agreement, and so "[t]he question of whether, for standing purposes, a non-party to a contract has a legally enforceable right therein is a matter of state law." *Bochese*, 405 F.3d at 981 (alteration added; citations omitted)).

Consistent with the Court's April 1, 2025 Order, because neither side explains why Florida law is the state law that should apply and Defendants ground their arguments primarily in Florida law (*see generally* Mot.; Reply), while Plaintiffs cite no authority in support of their position and raise no objection to the application of Florida law, the Court once again applies Florida law. (*See* April 1, 2025 Order 10).

[7] The parties devote much discussion to whether the Court can consider copies of the various iterations of the USAID Agreement under the incorporation by reference doctrine. (*See, e.g*, Mot. 11 n.5; Resp. 15–16; Reply 11–14; Sur-Reply 2–3; Sur-Sur Reply 2). Because the Court finds Plaintiffs' allegations are facially insufficient to demonstrate standing, the Court does not address whether the incorporation by reference doctrine applies.

14

WL 3814254, at *4 (S.D. Fla. Sept. 4, 2012) (citation omitted); *see also Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 400 F.3d 1278, 1282 n.2 (11th Cir. 2005). All claims asserted on behalf of the Beneficiary Plaintiff are therefore dismissed due to his lack of standing.[8]

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants, The American Red Cross, Gail J. McGovern, Cliff Holtz, and The Board of Directors of the Red Cross's Motion to Dismiss the Third Amended Class Action Complaint **[ECF No. 69]** is **GRANTED**. The Third Amended Complaint **[ECF No. 68]** is **DISMISSED without prejudice** and without leave to amend.

**DONE AND ORDERED** in Miami, Florida, this 16th day of October, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[8] Defendants make additional arguments regarding Plaintiffs' inability to sue the Red Cross's Board of Governors as a separate legal entity (*see* Mot. 5 n.1), and Plaintiffs' failure to plead standing as to Holtz, (*see id.* 19 n.11). Because the Court finds that no Plaintiff has established standing, the Undersigned declines to address these arguments.